State v. Casto.

THE STATE v. EVERETT CASTO, Appellant.

Division Two, December 13, 1910.

1. IMPROPER REMARKS IN OPENING STATEMENT: Discharging Panel. In a prosecution for abortion, the prosecuting attorney, in impaneling the jury, said the crime was a misdemeanor and that defendant had seduced the deceased girl, to which defendant objected, and the court not only sustained the objection but admonished the prosecuting attorney not to make any improper statement. The *voir dire* examination continued, and the panel was qualified, but before the jury was sworn defendant filed a motion to discharge the entire panel on account of the statement about seduction, but made no effort to interrogate the jury to ascertain whether or not it would in any way influence them in reaching a verdict. *Held*, that it is not the practice of the court to pass upon the admissibility of testimony during the opening statement, and there being nothing to indicate that the prosecuting attorney made the statement otherwise than in good faith, and may in good faith have thought testimony as to seduction would be material and admissible, and therefore, under the circumstances, the court properly overruled the motion to discharge the panel.

2. ABORTION; Necessary to Preserve Life: Burden of Proof. The information should charge that the abortion was not necessary to preserve the life of the woman, and had not been advised by a physician as necessary; but even if the burden is on the State to prove that negative, it shifts to defendant when the uncontradicted evidence shows she was in perfect health up to the time she was taken by defendant to a special room rented by the doctor for him and her, because thereafter the necessity for the abortion was peculiarly within the knowledge of defendant and his co-indictee, the doctor.

3. **CONSPIRACY: Charged: Proof.** In order to render the declarations and statements of one conspirator admissible as evidence upon the trial of his co-conspirator, it is not necessary that the conspiracy be alleged in the indictment or information.

4. ————: **Proof of Existence: Acts and Words Admissible: Before Abortion.** It is not necessary that the conspiracy be shown to exist before the acts and statements of a co-conspirator may be admitted in evidence. Nor is it necessary that some witness testify directly to the existence of the conspiracy. Conspiracies, like frauds, are usually concocted in secrecy and can seldom be shown by positive and direct testimony, and this makes it necessary to permit them to be established by proof of cogent facts and circumstances tending to show their existence. And in this case the evidence is reviewed and held to be sufficient to establish the existence of a conspiracy between defendant, a doctor and another to commit a criminal abortion on a woman, and to show defendant knowingly participated therein, and the declarations and acts of the other two were admissible in evidence against him.

5. ————: **Abortion.** In an abortion case evidence of the acts and declarations of all the conspirators up to the death of the woman is admissible, and should not be restricted to their acts and statements up to the time of the abortion.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman,* Judge.

AFFIRMED.

*Geo. F. Longan* and *S. E. Moore* for appellant.

(1) As shown by the record there is not a word of evidence that tends to show or to intimate that the man Corbett had any knowledge, or even grounds, from which to suspect that Dr. Simonds or anyone else had performed a criminal operation, or any other kind, on Anna Bell; and as far as the record shows, he did not know and he never saw the defendant Casto. But the witness Brown was permitted to tell everything that Corbett said and did, from the time Anna Bell was brought to his home to the time of her death. (2) The court also permitted the witness Stotts to testify to statements made by Dr. Simonds, before any evi-

dence whatever had been offered to prove a conspiracy. "It is well settled that in order that the acts and declarations of one conspirator may be admissible in evidence against his co-conspirator, it must first be made to appear that a conspiracy existed, and that such acts and declarations were in furtherance of the common design." 201 Mo. 727. In this case there was no pretense of showing a conspiracy before the introduction of the statements of the co-conspirators. It may be claimed that there was evidence later on in the case, tending to prove a conspiracy between Dr. Simonds and this defendant Casto, but there was at no time any evidence tending to show a conspiracy with Corbett. Yet his acts and statements were put before the jury and never withdrawn, by instruction or otherwise. (3) In addition to these serious and fatal errors, the appellant contends that the conduct of the prosecuting attorney, when examining the jurors on their *voir dire*, in saying that this defendant Casto had seduced the girl Anna Bell, was so prejudicial to the rights of the appellant as to constitute reversible error. It must be borne in mind that there was not a word of evidence or an intimation by a single witness that Casto had seduced the girl. If the evidence had tended to prove this charge, it might be said that the error was harmless. It was the only statement before the jury that tended to prove any motive for Casto to commit the crime. It was made by a sworn officer of the State, and it is unreasonable to say that it did not have its influence on the minds of the jurors.

*Elliott W. Major*, Attorney-General, and *Charles G. Revelle*, Assistant Attorney-General, for the State; *Harvey D. Dow* of counsel.

(1) The second count of the information is predicated upon section 4459, R. S. 1909, and fully meets the objections and requirements announced in State v. Emerich, 87 Mo. 110; State v. Meek, 70 Mo. 355. (2)

The record discloses that while the jury was being impaneled and qualified, the prosecuting attorney, in stating the nature of the charge on which defendant was to be put upon trial, said defendant had seduced Anna Bell. The statement alone, however improper, afforded no basis for a challenge to the array. After the statement was made counsel for the defense had every opportunity to fully interrogate the jurors, which the record discloses they did, and ascertain whether this statement, or any other influence, would prevent them from trying the cause fairly and impartially. Each member of the panel thereafter qualified to the satisfaction of appellant, and he was accorded in this respect the only right to which he was entitled, a fair and impartial jury. State v. Hottman, 196 Mo. 122; State v. Matthews, 88 Mo. 124; Barnett v. Dalton, 69 Miss. 617. (3) Objections were interposed to evidence of statements and acts of appellant's co-defendants made and performed in the absence of appellant. This evidence was admitted upon the theory of a conspiracy entered into by appellant and his co-defendants for the purpose of producing the abortion. The record is replete with evidence showing that these parties were acting together in the accomplishment of a common and unlawful design, steadily pursuing and finally accomplishing the same object, and jointly guilty of conduct which does not harmonize with the actions of innocent men, and which is inconsistent with any reasonable theory except that they were criminal conspirators. A conspiracy, like any other fact, may be established by circumstantial evidence, and it is not necessary that it be proven by express agreement between the conspirators, or by direct evidence of any agreement. State v. Kennedy, 177 Mo. 166. In this case the trial court, whose duty it was in the first instance to say whether there was any evidence of conspiracy, has found that there is such evidence, and its finding was sustained by

the finding of the jury to which the question of conspiracy was properly submitted. The evidence of conspiracy in this cause is sufficient for that purpose. State v. Walker, 98 Mo. 103; State v. Roberts, 201 Mo. 728; State v. Kennedy, 177 Mo. 130; State v. Spaugh, 200 Mo. 591; State v. Darling, 199 Mo. 201; State v. Vaughn, 200 Mo. 20; State v. Ross, 29 Mo. 32; State v. Hickman, 75 Mo. 416; State v. Duncan, 64 Mo. 262. (4) The evidence discloses that on the evening of May 2nd, when the girl was taken to the room in Sedalia, this being but one week before she was delivered of the child, and but two weeks before her death, she was in good health. After this showing was made, the burden of proving that the operation was necessary in order to preserve the life of the girl, or that such operation had been advised by a physician to be necessary for that purpose, was on appellant. State v. Meek, 70 Mo. 355; State v. Hathaway, 115 Mo. 56. Under the decisions of this court, as well as common-law authorities, it is necessary for the indictment to negative exceptions which, under the statute, excuse the act, but the burden of establishing the excuse and bringing the accused within the exception is always on the defendant when such matters are within the peculiar knowledge of such defendant, as in this case. State v. Woodward, 182 Mo. 391; State v. Lipscomb, 52 Mo. 32; State v. Hathaway, 115 Mo. 36.


GANTT, P. J.—At the November term, 1908, of the circuit court of Pettis county, the prosecuting attorney filed his information, containing two counts. The second count is in the words and figures following, omitting caption:

"And the said Harvey D. Dow, prosecuting attorney for the State of Missouri within and for the body of the county of Pettis, upon his oath of office as such prosecuting attorney, further informs the court:

"That, William T. Simonds, Everett Casto and G. H. Corbett, at the county of Pettis and State of

Missouri, on the —— day of May, 1908, unlawfully, willfully and feloniously then and there did make an assault in and upon the body of one Anna Bell, a woman then and there being pregnant with a child, and did then and there willfully, unlawfully and feloniously use and employ a certain instrument or other hard substance, the nature and description whereof is to the prosecuting attorney unknown, then and there did unlawfully, willfully and feloniously insert, thrust and force the said instrument aforesaid into the private parts and womb of the said Anna Bell, and thereby then and there did greatly wound the said Anna Bell, in and upon the body and womb of the said Anna Bell, with the felonious intent thereby then and there to procure an abortion or miscarriage of the then existing pregnancy of her the said Anna Bell, and that the same not being then and there necessary to preserve the life of said pregnant woman, Anna Bell aforesaid, and that the same not having been then and there advised by a physician to be necessary for the purpose of procuring an abortion or miscarriage to preserve the life of the said Anna Bell, and by means and in consequence of the unlawful, willful and felonious employment and use of the said instrument or other hard substance as aforesaid in and upon the body and womb of her the said Anna Bell aforesaid, by the said William T. Simonds, Everett Casto and G. H. Corbett aforesaid, she, the said Anna Bell then and there became greatly wounded and mortally diseased of her womb and body, and then and there did languish and languishing did live, from the said —— day of May, 1908, until the 23d day of May, 1908, at the county of Pettis and State of Missouri, the said Anna Bell of the mortal wound and disease aforesaid did die.

"And so the prosecuting attorney aforesaid, of the county and State aforesaid, upon his oath aforesaid, does say that the said William T. Simonds, Everett Casto and G. H. Corbett, the said Anna Bell in the

manner and by the means aforesaid unlawfully, wickedly, willfully and feloniously did kill, slay and murder against the peace and dignity of the State.''

Which information was duly verified, before the clerk of the court, December 1, 1908.

The defendants were arrested and duly arraigned. The cause was continued from term to term until the November term, 1909, at which term a severance was ordered and defendant Casto was put upon his trial before a jury duly impaneled, and was found guilty as charged in the foregoing count and his punishment assessed at four years' imprisonment in the penitentiary. Motions for a new trial and in arrest were duly filed and overruled and defendant was sentenced in accordance with the verdict. From that sentence he appeals to this court.

On the part of the State the testimony tends to prove that on May 2, 1908, and for several months prior thereto, one Anna Bell, a female, was employed as a servant in the home of John T. Stinson, secretary of the State Fair Association, in the town of Sedalia, Missouri. At about eight o'clock on the evening of May 2d defendant Casto went to the home of Mr. Stinson, to whom he represented that he was the brother of Anna Bell; that he had received a telegram announcing the serious illness of their mother at her home in Cole Camp, Missouri, and that Anna Bell was then upstairs arranging to accompany him home, he having immediately before made arrangements with her to that end. In a few minutes thereafter he and the girl left the house, saying they intended to catch a train that evening for Cole Camp. Instead of going to Cole Camp defendant took the girl directly to a house in Sedalia where his co-defendant, William T. Simonds, a physician, was rooming, and there defendant and Simonds made arrangements with the proprietor for a room to be used and occupied by defendant and the girl. Simonds represented to the proprietor that he

knew both defendant and the girl, and that they were respectable people. This was on Saturday night, and defendant and the girl jointly occupied the room until Monday, at which time defendant paid part of the room rent and left, saying he would return the following day. Appellant did not return, but the girl occupied the room, in which she constantly remained, until six o'clock Saturday evening, May 9th, when one G. H. Corbett, co-defendant, took her in a buggy to a house in the country, about six miles south of Sedalia, arriving there between eight and nine o'clock on that evening. This house was occupied only by Corbett and a colored boy, and when Corbett arrived there with the girl she was crying and manifesting many signs of pain and suffering. Throughout the night and the following morning her sufferings continued, and Corbett and the colored boy attended her, Corbett at different times administering her medicine. During the following morning, and while she and Corbett were in the room alone, she was delivered of an immature child, which Corbett placed in a bucket and afterwards buried just south of his house. Through the following week the girl remained at this house unvisited by any one except Simonds, the colored boy and Corbett, and on Saturday evening of that week she died. After her death the body was removed to the undertaker's, where a post-mortem examination was conducted by the coroner and Dr. Ferguson. This examination disclosed that an operation had been performed, by the use of certain instruments, causing abortion and the death of the woman. The womb was much contused and lacerated, and almost in a state of decomposition, all of which was due to the operation.

At the time defendant took the girl from the home of Mr. Stinson she was apparently in perfect health and showed no evidence of pregnancy. The appellant and the physician jointly arranged for the use of the room to which the girl was first taken, Simonds vouch-

ing for the character of the renters, and making most of the preliminary arrangements. Appellant and the girl jointly occupied the room from Saturday night until Monday morning, when appellant paid part of the room rent and left, promising to return and pay for the room during its occupancy by the girl. Simonds, the physician, attended the girl constantly, administering to her both before and after the departure of appellant. During the week that she remained in Sedalia Simonds made daily visits to her room, and after she was taken to the house occupied by Corbett and the colored boy he continued his professional calls. From the time she was taken by appellant to this house where Simonds also roomed, until her death, she was neither visited nor seen by any persons except appellant, Corbett, Simonds, the colored boy, and one other man who was unacquainted with her, and who, in response to a note sent by her, went to the room in Sedalia, where he remained but a few minutes.

Simonds, the physician, stated to the proprietor of the room that the girl was brought by appellant from Cole Camp to Sedalia for medical treatment, and Corbett said it was through arrangements made by him with Simonds that the girl was removed from Sedalia to his house. As Corbett was taking the body of the child from the girl's room for the purpose of burying it, he told the colored boy that no one knew anything concerning the affair, and admonished the boy to say nothing of it to any one.

Appellant offered no evidence in his own behalf, but stood on a demurrer to the State's evidence.

This prosecution is for the offense denounced in section 1853, Revised Statutes 1899 (now Sec. 4459, R. S. 1909), which provides: "Every person who shall willfully administer to any pregnant woman any medicine, drug or substance whatsoever, or shall use or employ any means whatsoever with intent thereby to procure abortion or the miscarriage of any such

woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by a physician to be necessary for that purpose, shall, upon conviction, be adjudged guilty of a misdemeanor and punished by imprisonment in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment; but if the death of such woman ensue from the means so employed, the person so offending shall be deemed guilty of manslaughter in the second degree.''

The second count of which defendant was found guilty aptly and sufficiently charges manslaughter under said section. Indeed the information is not assailed in this court.

I. While the jury was being impaneled, the prosecuting attorney, in stating the nature of the charge on which defendant was to be put on trial, said: ''Gentlemen, the charge in this case is that of manslaughter. The crime, as herein charged, was committed along in the month of May, 1908. One Anna Bell, a young girl, who was living here in the city of Sedalia, and who the defendant, Everett Casto, seduced.''

Counsel for defendant objected at once to the statement that defendant had ''seduced the deceased,'' and the court not only sustained the objection, but admonished the prosecuting attorney to refrain from any improper statement. Thereupon counsel proceeded with the *voir dire* examination, and the panel qualified, but before the jury was sworn to try the cause, counsel for defendant filed a formal motion to discharge the entire panel on account of said statement. There is nothing to indicate that the prosecuting attorney made the statement otherwise than in perfect good faith, and believing he might establish the truth of the assertion, but independent of this, counsel had full opportunity to interrogate the jury and ascertain whether said statement would in any way influence them in reaching

their verdict. It is not the practice to pass upon the admissibility of evidence during an opening statement.

Of course, the court can exclude wholly irrelevant matter, but the court cannot know in advance that counsel cannot establish a fact which may prove material, and counsel may in perfect good faith think testimony material which the court may exclude upon objection.

We think the court properly overruled the motion to set aside the panel.

II. The information negatived the exception in the statute that the abortion was necessary to preserve the life of the girl or had been advised by a physician to be necessary, as our decisions require. [State v. Meek, 70 Mo. 355; State v. Hathaway, 115 Mo. 1. c. 36.]

If the burden was on the State to prove this negative, we think when it appeared by the uncontradicted testimony that up to the very hour Anna Bell was taken to the Stotts house, she was in perfect health, the burden then shifted to defendants to show that the abortion was necessary to preserve her life, because if such was the case and abortion had been resorted to for that purpose, the necessity was a matter peculiarly within the knowledge of defendant, and the doctor.

III. The defendant strenuously objected to the acts and declarations of Dr. Simonds on the ground that no conspiracy had been charged and the evidence had not shown such conspiracy prior to the admission of his acts and statements.

As to the first of these objections, it is the settled law of this State that it is not necessary, to render the declarations of one conspirator admissible against his fellow, that the conspiracy should be alleged in the indictment or information. [State v. Kennedy, 177 Mo. l. c. 165; State v. Collins, 181 Mo. 1. c. 261.]

If by the second ground of the objection, it is meant that no witness had testified directly to a conspiracy on the part of defendant Casto and Dr. Simonds to produce the abortion, it is true, but as has often been said by courts and text-writers, from their very nature conspiracies, like frauds, are usually concocted in secrecy and can seldom be shown by positive and direct testimony, and this makes it peculiarly necessary to permit them to be established by proof of facts and circumstances, more or less cogent, tending to show their existence. A conspiracy, like other facts or crimes, may be established by circumstantial evidence. Without repeating the facts set forth in the statement, we think that evidence clearly points to defendant and Dr. Simonds as acting together for the accomplishment of one unlawful and criminal purpose, and that was to produce an abortion on Anna Bell. To rational minds, the conduct of defendant in going to Mr. Stinson's where the girl was at work, and falsely representing himself to be her brother and that he had come to take her to her sick mother at Cole Camp, and then immediately taking her to the room where the sequel shows the criminal practices were resorted to which finally produced the abortion, is strongly indicative of conscious guilt. In view of the subsequent facts, his conduct can only be ascribed to a guilty motive and a knowledge peculiar to himself and the girl at that time.

An innocent purpose cannot be ascribed to his remaining in the room at the Stotts house. Whether single or married, his remaining and occupying the same room and bed with the young girl showed a guilty relation, one that caused him to feel it incumbent on himself to pay the rent of the room. When his conduct towards the young woman is borne in mind with the fact of her pregnancy at that time, the question as to his motive in coming from his home in Benton county and taking her away from her employer's house, an-

swers itself. When he gets her to the Stotts house his co-defendant, Dr. Simonds, is there ready to vouch for the respectability of both the girl and Casto and to secure them a room. Thereupon the visits of the doctor begin and continue with regularity, each day for a week, and until the healthy robust girl has become very sick, and then it is the defendant Corbett is mysteriously apprised of the girl's condition, and his good offices invoked to get her out of the city to his cheerless abode, six miles in the country, with no woman there to minister to her, and no person in the house but Corbett and the negro ex-convict.

These things could not have happened by chance. The court hearing this evidence and noting circumstances, had ample ground to say there was sufficient evidence of a conspiracy to admit the statements of one of them against the others.

While defendant concedes there was evidence tending to show a conspiracy between Simonds and Casto, he insists there was nothing to show a conspiracy with Corbett.

Corbett's conduct is utterly inexplicable on any other theory than that he was fully advised of the purpose to produce the abortion and to hide the result.

Why should a perfect stranger to this girl, unsolicited, appear at the Stotts house and begin at once to move her small effects to his place six miles in the country? Why should a normal man, with even the ordinary instinct of humanity, not to say delicacy, become a party to this scheme of taking this poor suffering unfortunate to his house in the country where there was no woman to give her those attentions which only a woman could properly render in her then condition? Why when the abortion was complete, was not some woman called in to nurse her? It is almost incredible that such a transaction could have been deliberately planned and executed in a civilized community. Corbett's acts and statements were facts inseparably con-

nected with the conspiracy and final culmination in the death of the girl.

The court excluded all that was said and done after the abortion itself was complete, and of course defendant is in no attitude to complain of this ruling, but we think evidence of the acts and declarations of all three of the defendants was admissible up to the death of the girl. The offense of manslaughter for which defendant was on trial and of which he was convicted was not complete until her death.

After a careful consideration of the whole evidence and record in this case, we have reached the conclusion there is no reversible error in the admission of testimony or in the instructions of the court and the judgment is affirmed. *Burgess* and *Kennish, JJ.,* concur.