UNITED STATES of America,
Appellee,

v.

William DeVERSE, Appellant.

No. 71-1741.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1972.

Decided July 19, 1972.

Rehearing Denied Aug. 8, 1972.

Robert Hickel, Clayton, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

Defendant-appellant, William DeVerse, was convicted by a jury upon a one-count indictment charging him and three other persons with the robbery of a federally insured savings and loan association and with placing the life of one of its employees in jeopardy, in violation of 18 U.S.C.A. § 2113(a) and (d).[1] Appellant was sentenced to twen-

---

1. 18 U.S.C.A. § 2113 provides:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in

ty-five years' confinement. Two of appellant's co-defendants, Carlos Scruggs and Reginald Chambers, were jointly tried and convicted of the same offense.[2] The convictions were affirmed, but remanded for resentencing. Scruggs v. United States, 8 Cir., 1971, 450 F.2d 359. Appellant's third co-defendant, Charles Washington, pleaded guilty to the offense, and died on August 24, 1971.

On appeal, appellant raises contentions under the following broad headings:

1. The evidence was insufficient to support the conviction.

2. The trial court erred in the admission of certain testimony and exhibits.

3. The trial court erred in the giving of certain instructions.

SUFFICIENCY OF THE EVIDENCE

The robbery in question occurred shortly after noon on October 23, 1970. Three disguised men entered the Pulaski Savings & Loan Association wielding various weapons, including a sawed-off shotgun. While in the bank, one of the robbers threatened Miss Jackie Agnew, a bank teller, by stating, "Give me the money, girl. This is a Luger." The three robbers left the bank building and escaped in a light-colored car driven by a fourth person. One of the witnesses testified that the get-away car had three numbers painted on the front windshield, the last two being 9 and 5. She stated the first was either a 2 or 5, making the figure either 295 or 595.

Roosevelt Davis, an employee of a used car lot, testified that Washington, accompanied by the appellant, came to his apartment the morning of the robbery. Washington, in appellant's presence, offered Davis $100.00 for the use of his car. Davis accepted, but Washington and appellant could not start the car. With the assistance of Davis, the car was started and they then proceeded to a car sales lot at which Davis was employed. At the lot, Davis selected a 1961 Buick Special, gave the keys to Washington to "test drive it" and observed Washington pick up appellant, who had been waiting by Davis' car.

Charles Forister, a detective for the St. Louis Police Department, testified that at about 11:45 A.M. of October 23, 1970, he observed two young black males pass his patrol car in a 1961 Buick compact four-door having the figures "295" on the windshield. Forister and his partner received a call over the radio at 12:14 P.M. concerning the robbery. Some ten minutes later a description of the hold-up car was released. Forister subsequently went to the apartment complex to which they had seen the car heading, discovering it in a breezeway between two apartment buildings. Roosevelt Davis identified the car as the one he had given to Washington. Washington was arrested on October 25th.

Subsequent to the arrest of Washington, on Monday, October 26th, agents of the FBI attempted to arrest Carlos Scruggs at his apartment. In an apartment across the breezeway from Scruggs' apartment numerous articles of clothing and a metal clyinder were dis-

such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\* \* \* \* \*

"(d) Whoever, in committing, or in attempting to commit, any offense de-

fined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

2. While indicted jointly with Scruggs and Chambers, appellant was not tried with them, he being an unapprehended fugitive at the time of their trial.

covered. The clothing was identified as being similar in nature to that used in the robbery. On November 3, 1970, Chambers was arrested with a shotgun on his person. The cylinder found in the apartment fairly closely matched the shotgun found on Chambers.

Mrs. Veronica Washington, widow of defendant Charles Washington, testified that two days *before* the robbery and in her presence DeVerse was asked by Washington, "Man, have you all the stuff?" DeVerse replied, "Just don't worry about us." Mrs. Washington said that every time her husband spoke of "stuff" or "money" he got into trouble. Washington replied to her that, " * * * We getting ready to come into some big money."

Appellant went to see Mrs. Washington twice *after* Washington was arrested. On the second occasion, the following conversation took place between appellant and Mrs. Washington:

"Q And what did Mr. DeVerse say first?

"A 'How is Charlie?'

"Q What did you say?

"A Told him he was fine.

"Q And what did you say after that?

"A He still wanted to see what he was talking about.

"Q And what did you tell him?

"A I asked him, why don't he turn himself in.

"Q You directed this to Mr. De-Verse?

"A Yes.

"Q And what did Mr. DeVerse say?

"A 'Oh, Charlie don't want me to turn myself in.'

"Q And what else transpired?

"A So I told him that if Charles didn't tell on him, I was going to tell on him.

"Q And what did he say, if anything?

"A 'Girl, if you tell on me I'll get my gun molls on you.'

"Q Anything else said?

"A He said, 'I ain't going to do no more time noway.'

"Q Was that about the substance of the conversation that you can remember?

"A That's about all.

"Q Then he left?

"A Uh huh."

At the close of the government's case, appellant moved for a judgment of acquittal, which the trial court denied.

In Tanner v. United States, 8 Cir., 1968, 401 F.2d 281, at page 285, cert. denied, 1969, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806, this court stated:

"The applicable general rules here involved are well established. Maguire v. United States, 358 F.2d 442, at page 444 states:

'In considering the motion for acquittal, the trial court must view the evidence in the light most favorable to the government, together with inferences which may fairly be drawn therefrom, and then determine whether there is substantial evidence from which a jury might properly find the accused guilty beyond a reasonable doubt. This standard is applicable to each of the several elements of the offense. Cartwright v. United States, 10 Cir., 335 F.2d 919. * * *.' "

In the instant case, an executive officer of the Pulaski Savings & Loan Association produced the insurance certificate issued by the Federal Savings and Loan Insurance Corporation to the bank. Additionally, evidence was tendered to the *effect* that the insurance premium had been paid as of the date of the robbery. As noted previously, Miss Jackie Agnew testified that one of the robbers threatened her with a gun. These facts are sufficient to establish the elements charged. Scruggs v. United States, supra, 450 F.2d 359; United States v. Phillips, 9 Cir., 1970, 427 F.2d 1035,

cert. denied, 1970, 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106; United States v. Thompson, 5 Cir., 1970, 421 F.2d 373, vacated, 1970, 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 17; Callahan v. United States, 9 Cir., 1966, 367 F.2d 563.

The circumstantial evidence enumerated above provides a viable nexus upon which the jury linked the appellant to the crime in question. The evidence demonstrated that appellant (1) was similar in appearance to one of the robbers; (2) was with Washington when the hold-up car was acquired; (3) was conversing with Washington two days prior to the robbery and told him not to "worry about us" when Washington inquired whether appellant had "the stuff"; (4) threatened Mrs. Washington when she suggested that he turn himself in.

This court has repeatedly held that circumstantial evidence may provide the basis for a conviction. As Judge Matthes noted in United States v. Pope, 8 Cir., 1969, 415 F.2d 685, 688, cert. denied, 1970, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132:

> "It is, of course, fundamental that an offense may be proved by and rest upon circumstantial evidence. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Peterson v. United States, 411 F.2d 1074 (8th Cir. 1969); Doss v. United States, 355 F.2d 663, 667 (8th Cir. 1966); DeVore v. United States, 368 F.2d 396, 399 (9th Cir. 1966)."

Appellant additionally contends that there was insufficient evidence to show that the stolen money belonged to or was in the care, control or custody of the Pulaski Savings & Loan Association. We find this contention to be without merit.

## ADMISSION OF EVIDENCE

Appellant argues that the trial court erred in admitting (1) testimony concerning the arrest of defendants Scruggs and Chambers; (2) photographs of Scruggs and Chambers; (3) various items found by FBI agents in the apartment across the breezeway from Scruggs' apartment; (4) the testimony of Roosevelt Davis; and that the net effect of admitting this evidence was to prejudice appellant's trial.

The trial court, over appellant's timely objections, admitted evidence as to the arrests of Chambers and Scruggs; photographs of Scruggs, Chambers and Washington; and the various items found in the apartment heretofore described.

The admission of the arrests of Scruggs and Chambers provided the foundation for the admission of two of the weapons used in the robbery. The items in the apartment were further tangible bits of evidence inferentially linking appellant with the crime. The photographs were apparently admitted to buttress the testimony of Detective Forister.

Appellant contends that the probative worth of the aforementioned evidence is overshadowed by the prejudicial effect of their admission. We agree with appellant that Judge Learned Hand, in United States v. Krulewitch, 2 Cir., 1944, 145 F.2d 76, 80, rev'd on other grounds, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, set forth the correct standard:

> " * * * the competence of evidence in the end depends upon whether it is likely, all things considered, to advance the search for the truth; and that does not inevitably follow from the fact that it is rationally relevant. As has been said over and over again, the question is always whether what it will contribute rationally to a solution is more than matched by its possibilities of confusion and surprise, by the length of time and the expense it will involve, and by the chance that it will divert the jury from the facts which should control their verdict."

In the instant case, the trial court instructed the jury that as to appellant's relationship to the other defendants:

> "You have been informed by the Court that the defendant Washington

entered a plea of guilty to the charge, and that the defendants Chambers and Scruggs were indicted. The fact that these events occurred is not to be considered by you as evidence in this case that the defendant William DeVerse is guilty of the charge. As a matter of fact, it is not to be considered by you in arriving at the conclusion that any crime was committed. The evidence is what you hear from the witness stand here in Court and also by exhibits that were entered. You should decide this case upon that evidence alone."

In general, broad discretion is reposed in the trial court regarding the admission of evidence. This is especially true when the evidence is circumstantial and its probative worth is in doubt. In Jones v. United States, 4 Cir., 1958, 262 F.2d 44, cert. denied, 1959, Princeler v. United States, 359 U.S. 971, 79 S.Ct. 886, 3 L.Ed.2d 838, Judge Sobeloff noted at page 47 of 262 F.2d:

"Even if a fact, standing alone, does not conclusively demonstrate guilt, a defendant is not entitled to have it filtered out of the evidence. An effort to blinker out all circumstantial color and tone would result only in distortion."

See, also, United States v. Cole, 8 Cir., 1971, 449 F.2d 194; United States v. Leach, 8 Cir., 1970, 429 F.2d 956, cert. denied, 1971, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151; White v. United States, 8 Cir., 1968, 399 F.2d 813. Cf. Smith v. United States, 8 Cir., 1969, 407 F.2d 356.

We have difficulty in justifying the admission of the photographs of appellant's co-defendants. We have examined them. They are typical "mug shots" without the identifying jail numbers. What the photographs contributed to this "search for truth" is not clear. We believe their admission was error but, under the circumstances, certainly non-prejudicial error in no way affecting appellant's substantial rights. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Landwehr v. United States, 8 Cir., 1962, 304 F.2d 217; Rule 52(a), F.R.Crim.P., 18 U.S.C.A.

Appellant also argues that Washington's statements to Roosevelt Davis should not have been admitted, they being hearsay and also too remote in time to the alleged crime. As to the hearsay objection, it has long been held that conversations of a co-defendant in furtherance of a joint venture are admissible even when no conspiracy has been charged in the indictment. United States v. Reed, 8 Cir., 1971, 446 F.2d 1226; United States v. Ragland, 2 Cir., 1967, 375 F.2d 471; United States v. Smith, 6 Cir., 1965, 343 F.2d 847, cert. denied, 1965, 382 U.S. 824, 86 S.Ct. 55, 15 L.Ed.2d 69. The contention that Washington's statements to Roosevelt Davis were too remote in time to the alleged crime is completely without merit. The conversations occurred only a few hours prior to the robbery.

## INSTRUCTIONS

Appellant claims several errors relating to the instructions of the trial court. We have reviewed the instructions and appellant's objections thereto. We find that the instructions considered as a whole, as they should be, were clear, accurate and not confusing or contradictory.

A complete review of this entire record convinces us that the appellant was fairly tried and fairly convicted on substantial, albeit circumstantial, evidence.

Affirmed.