**STATE of Missouri, Respondent,**

v.

**Jerry Lee FUHR, Appellant.**

**No. WD 34603.**

Missouri Court of Appeals,
Western District.

Oct. 25, 1983.

James W. Fletcher, Public Defender, Anne Hall, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

Defendant appeals his conviction for capital murder. A life sentence without probation or parole for fifty years was imposed. We affirm the judgment.

Defendant raises two issues on appeal: (1) that the trial court erred in refusing to declare a mistrial because of claimed error in the prosecutor's closing argument and (2) that the trial court improperly admitted hearsay evidence and thus violated defendant's right to confrontation.

The defendant does not challenge the sufficiency of the evidence, but the following statement of the facts adduced at trial is necessary for a disposition of the hearsay issue.

Two people were charged with the murder of Maxine Gordon: Sheila Gordon (defense counsel informs us in his brief that Sheila Gordon was the adopted daughter of Maxine Gordon) and Jerry Fuhr, defendant in this case. They were tried separately and Sheila Gordon pled guilty to murder in the second degree sometime after her trial had started. She was not a witness in defendant's trial.

One of the state's witnesses, Vicki George, testified to some of the events she perceived leading up to and following the death of Maxine Gordon, as she had accompanied defendant and Sheila Gordon throughout most of the day on which Maxine Gordon was killed. She did not, however, observe the actual killing or death of Maxine Gordon.

Vicki George testified that she had known Sheila Gordon approximately three weeks and had met the defendant for the first time on the evening of February 5, 1980. Sheila Gordon was to pick Vicki up on the morning of February 6, 1980, so they could "mess around." As agreed, Sheila picked up Vicki at her house that morning, and defendant, Sheila Gordon, and Vicki George drove to defendant's home.

The prosecutor asked Vicki George if there had been any conversation between Sheila Gordon and defendant while the three of them were riding in the car. Vicki responded affirmatively, and when the prosecutor asked her to relate what was said, defense counsel made a hearsay objection. The court overruled the objection, and Vicki testified as follows:

> Sheila said to Jerry, "Jerry, will you still do that for me?" And Jerry said, "Sheila, we should have did that this morning while it was still dark."

Without further objection, Vicki testified that she did not recall any further conversation between defendant and Sheila Gordon until the three of them went inside Jerry's house. The prosecutor asked what the three of them did when they got inside the house and the following ensued:

> Vicki George: Well, we went in the house. I sat down in a chair by the front door, and Sheila started talking to Jerry again, asking him will he still do that for her, and he said no—
>
> Defense Counsel: Objection, Your Honor, hearsay, non-responsive.
>
> The Court: Overruled.
>
> Vicki George: And he said, "No, Sheila, we should have did that this morning while it was still dark," and she said, "Jerry, we still have plenty of time to do it before the streets get crowded from the morning traffic, people going to work," so he hesitated for a moment and then he said, "Okay, I'll do it."
>
> Prosecuting Attorney: Was there any conversation that you overheard between Sheila and this defendant concerning rings or property—

Defense Counsel: Objection.

Prosecuting Attorney: —owned by Mrs. Gordon?

Defense Counsel: Objection, leading, calls for hearsay.

The Court: It is leading, sustained.

Prosecuting Attorney: Tell us what other conversation, if any, that you overheard them talking about.

Defense Counsel: Objection, hearsay.

The Court: Overruled.

Vicki George: She had mentioned—Jerry asked her why she wanted to kill her mother so bad, and she told him that when her mother was in Korea she had gotten shot in the head and that her mind just slipped from time to time and that from that accident she was drawing Social Security for Sheila and herself, and she said that when her mother got the Social Security checks she never would give her any money. She would always ask her for money, but she never would give her any, and she said she didn't know why, and she also said that out of—they would get out of killing the woman—she had a diamond ring, wedding ring worth $3,000.00, and she kept money in a green box under her bed.

Prosecuting Attorney: All right. Do you recall any other conversation with regard to the killing of this woman or of the getting money from her after she was murdered?

Defense Counsel: Same objection, calls for hearsay.

The Court: Overruled.

. . . .

Vicki George: Yes, Jerry told Sheila that her best bet was to stab her mother in the neck, right after she opened the door, and turned to walk away from her toward the kitchen.

Vicki further testified without objection that defendant went into the kitchen and came back into the living room with a butcher knife and a white towel. The trio then left the house and drove to the home of Maxine and Sterling Gordon, Sheila's aunt and uncle who had reared her since infancy. (Hereinafter, Mrs. Gordon will also be referred to as "Sheila's mother" as that is how Sheila and Vicki refer to Mrs. Gordon.) Sterling Gordon had already left for work when they arrived.

Vicki George stayed in the car while Sheila and defendant went in. Defendant came out of the house about fifteen minutes later and got in the car. Vicki testified that defendant rubbed something off the car door and that she saw blood on the inside of the door. Before Sheila returned, Vicki asked defendant what was wrong and he said, "She's dead." Vicki responded, "Oh, Jerry, your just bullshitting me," and he replied, "No, she's dead." Defendant then raised his hands and looked at them and said, "Damn." Vicki saw blood on defendant's hands at this point. Defendant told her that Mrs. Gordon had said, "Oh, Sheila, are you going to let them do this to me?" He then told Vicki that he "started stabbing her over and over again," and that Mrs. Gordon had said, "Oh my God, I'm going to die."

Sheila then came out of the house carrying a purse and a green metal box. Defendant asked Sheila where the ring was, and she responded that she thought she had dropped it or lost it. The three began driving around looking for a place to throw the knives. They stopped at a liquor store, and Sheila and Vicki went to buy cigarettes. When they walked out, Vicki saw defendant walking away from the store's trash bins. The three got back in the car and Sheila drove defendant home.

During his closing argument, the prosecutor referred to the defendant as a "hired killer" and as a "man [who] kills for money" in the following context:

Now, ladies and gentlemen, it's—it's my duty and my privilege to address you for a few minutes. It gives me the opportunity to go over this evidence with you and the defendant's arguments and tell you what I really think about this case.

Now first of all, he [defense counsel] starts talking about the fact, well, he doesn't think the State is going to con-

sider manslaughter. Well, manslaughter is a lesser included offense. Why should we consider manslaughter? Let's get one thing straight right now. You're dealing with a hired killer. This man kills for money.

At that point, defense counsel objected and moved for a mistrial asserting that the prosecutor's remarks were prejudicial and not related to facts in evidence. The court overruled defendant's motion for a new trial but sustained the objection and instructed the jury to disregard the prosecutor's last comments.

Resolution of defendant's first point on appeal requires us to address his second point, the hearsay objection, first. Defendant alleges error by the trial court in its refusal to sustain his objections to the testimony of Vicki George concerning the statements Sheila Gordon made to defendant prior to their arrival at Maxine Gordon's home. Defendant contends that the testimony relating what Sheila Gordon said was hearsay not falling within any exceptions to the hearsay rule and that the admission of this evidence thereby denied defendant his constitutional right of confrontation and cross-examination. U.S. Const., Amend. VI and Mo. Const., Art. I § 18(a).

 An out-of-court statement is hearsay only if offered to prove the truth of the matters asserted therein. *State v. McIntosh,* 635 S.W.2d 370, 371 (Mo.App.1982); *State v. Harris,* 620 S.W.2d 349, 355 (Mo. 1981); *State v. Johnson,* 637 S.W.2d 157, 161 (Mo.App.1982). Vicki George's testimony regarding Sheila's appeals to "do that for me" and her statement that "there is plenty of time" were not offered to prove that Sheila really asked defendant to do that for her nor to prove that there was really time to do so. Nor was any testimony offered to prove that Sheila's mother "had a diamond ring, wedding ring worth $3,000.00," or that "she kept money in a green box under her bed."

The only testimony which may have been offered for the truth of which it asserts was the testimony concerning what "they [defendant and Sheila Gordon] would get out

of killing the woman." Because no limited offer of proof nor limiting instruction was given, the jury may have assumed that defendant and Sheila would get a "diamond ring," a "wedding ring" and "money" out of killing Sheila's mother.

 This testimony was admissible, however, as a declaration of a co-conspirator made in furtherance of the objects of the conspiracy. *Glasser v. United States,* 315 U.S. 60, 74, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); *Delaney v. United States,* 263 U.S. 586, 590, 44 S.Ct. 206, 207, 68 L.Ed. 462 (1924); *Wiborg v. United States,* 163 U.S. 632, 658, 16 S.Ct. 1127, 1137, 41 L.Ed. 289 (1896); *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978). In ruling on admissibility, the trial judge must first determine whether any evidence of conspiracy appears, *State v. Darling,* 199 Mo. 168, 97 S.W. 592; *McCutchan v. Kansas City Life Ins. Co.,* 122 S.W.2d 59, 68 (Mo.App.1938), whether by direct and positive proof or by inference from the facts and circumstances in evidence. *State v. Fields,* 234 Mo. 615, 138 S.W. 518, 520 (1911). To justify admission of such statements of a co-conspirator, the proof in the first place need only satisfy the trial judge of the prima facie existence of the conspiracy. *State v. Roberts,* 201 Mo. 702, 100 S.W. 484, 491 (1907). If the trial judge, in making his preliminary decision on admissibility, has grounds to find by a preponderance of the independent evidence that the defendant and the declarant were members of a conspiracy and that the declaration was made during the course and in furtherance of the conspiracy, he may admit testimony as to the declaration. *United States v. Bell, supra,* at 1044. On review, the appellate court's inquiry is limited to whether the trial judge had reasonable grounds to make his finding. *United States v. Gibbs,* 703 F.2d 683, 688 (3rd Cir. 1983).

Such grounds are found in this record in the direct evidence. Sheila Gordon asked defendant Fuhr if he would "*still* do that for her," evidencing their earlier agreement. Although defendant appeared from the testimony to be having second thoughts,

he finally agreed, "Okay, I'll do it." This evidence was independent of the hearsay testimony and supplied ample ground for the trial judge to find the conspiracy between Sheila and defendant. Moreover, Vicki George also testified that after the attack on Mrs. Gordon, Sheila came out of the house carrying a purse and a green metal box and that defendant asked Sheila about the ring.

■ Defendant argues that the conspiracy was not shown to exist until the defendant agreed to commit the crime *and* performed some overt act, that is, until defendant came out of the kitchen carrying a knife. The evidence required to show the existence of a conspiracy for the purpose of admitting into evidence a statement made by a co-conspirator differs from the evidence required to convict someone of the crime of conspiracy. The former requires only a showing of an agreement between defendant and declarant and a statement in furtherance of their scheme. *State v. Roberts, supra; State v. Darling, supra; State v. Walker,* 98 Mo. 95, 9 S.W. 646, 649 (1888); *McCutchan v. Kansas City Life Ins. Co., supra.* Of course, proof of the crime of conspiracy involves proof of an overt act performed by a conspirator in pursuance of the conspiracy. Defendant was not charged with the offense of conspiracy. § 564.016. For purposes of testing the admissibility of a co-conspirator's declarations, a conspiracy need not be charged in the indictment or information. *United States v. DeVerse,* 464 F.2d 80, 84 (8th Cir.), 409 U.S. 988, 93 S.Ct. 342, 34 L.Ed.2d 253 (1972); *State v. Casto,* 231 Mo. 398, 132 S.W. 1115, 1118 (1910).

Accordingly, defendant's argument that no conspiracy existed until defendant carried a knife in from the kitchen and that any testimony about statements made prior to the commission of that overt act was inadmissible must fail. The trial court did not err in admitting into evidence the hearsay testimony regarding what "they [defendant and Sheila Gordon] would get out of it," as such testimony was admissible under the co-conspirator exception to the hearsay rule.

In his first point on appeal, defendant contends that the trial court erred in refusing to grant defendant's motion for a mistrial after the prosecuting attorney, during his closing argument, referred to the defendant as a "hired killer" and as a "man [who] kills for money."

On appeal, defendant contends that he was denied his constitutional right to a fair trial due to the prejudicial effect of the prosecutor's characterization of him. Those epithets, defendant argues, were not based on proper evidence in the record but were based on inadmissible hearsay. We have already decided that the evidence upon which the prosecutor based his comments was admissible. The remaining question is whether his use of the epithets was, nevertheless, so improper and prejudicial as to require reversal.

■ Considerable latitude is tolerated in summation, and the trial court has broad discretion in controlling it. *State v. Wren,* 643 S.W.2d 800, 802 (Mo.1983); *State v. Newlon,* 627 S.W.2d 606, 616 (Mo.) (en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *State v. Murphy,* 592 S.W.2d 727, 732–33 (Mo.1979) (en banc). Unless an abuse of that discretion results in prejudice to the defendant, the trial court's ruling will not be disturbed. *State v. Smith,* 588 S.W.2d 139, 144 (Mo. App.1979).

■ An attorney should not argue matters not in evidence, *State v. Murphy, supra,* at 732, *State v. Cuckovich,* 485 S.W.2d 16 (Mo.1972) (en banc), and should not misstate or pervert the evidence, *State v. Stiltz,* 647 S.W.2d 168, 169 (Mo.App.1983). Nor may he base his argument on hearsay evidence. *State v. Chernick,* 278 S.W.2d 741, 748 (Mo.1955). Counsel may, however, draw non-evidentiary conclusions fairly justified as inferences from the evidence, *State v. Turner,* 633 S.W.2d 421, 428 (Mo.App. 1982); *State v. Ball,* 622 S.W.2d 285, 290 (Mo.App.1981). Similarly, a prosecutor's use of epithets during closing argument rises to the level of prejudicial error only if the epithets cannot be linked to some evi-

dentiary base. *State v. Miller,* 604 S.W.2d 702, 709 (Mo.App.1980) (citing five Missouri cases where the use of various epithets failed to rise to the level of prejudicial error).

 The prosecuting attorney's characterization of the defendant as a "hired killer" and as a "man [who] kills for money" was a justifiable inference from the evidence. Vicki George's testimony reciting Sheila Gordon's comments to the defendant that the defendant and Sheila would get money and rings out of killing Mrs. Gordon provides an evidentiary base for the conclusions reached and epithets used by the prosecutor. *See State v. Nichelson,* 546 S.W.2d 539 (Mo.App.1977) (where the court found evidence supported prosecutor's characterization of defendant as a "professional car thief"). Moreover, defendant's question to Sheila Gordon immediately after the killing regarding the whereabouts of the ring is also evidence from which the inference could be drawn that defendant killed Mrs. Gordon for money.[1]

In any event, the defendant's objection was sustained and the jury instructed to disregard the remarks. Thus, under the circumstances, the prosecutor's remarks, "You're dealing with a hired killer" and "[t]his man kills for money" do not rise to the level of prejudicial error, and denial of the drastic remedy of a mistrial was clearly within the sound discretion of the trial court. *State v. Haynes,* 528 S.W.2d 11, 13 (Mo.App.1975); *State v. Wren, supra,* at 801–02; *State v. Smith, supra,* at 144; *State v. Nichelson, supra,* at 543.

For the foregoing reasons, we affirm defendant's conviction for capital murder.

All concur.

1. Defendant mentions the prosecutor's remarks created a "vision [that] implied that appellant had been involved in other killings, ones for which he was paid." He asserts that this "allusion was improper because there was no evidence that defendant had committed any other killings." He relies on the well settled rule that a prosecutor may not express an opinion implying awareness of facts not in evidence. *State v. Newlon, supra,* at 616–17; *State v. Jackson,* 499 S.W.2d 467, 471 (Mo.1973). We find the

application of the above rule inappropriate in this case because the prosecutor's remarks did not imply an awareness of facts not in evidence. Characterizing the defendant as a "hired killer" did not imply that the defendant had been involved in other killings," but that the defendant killed Sheila's mother in this case for money. Such an inference was properly based on the evidence. *See State v. Nichelson, supra,* at 543–44.