STATE of Missouri, Respondent,

v.

Marsha FREDERICKSON, Appellant.

No. 69654.

Supreme Court of Missouri,
En Banc.

Nov. 17, 1987.

Robert A. Hampe, St. Louis, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted of promoting prostitution in the third degree, section 567.070, RSMo 1986, defendant sought review in the Court of Appeals—Eastern District. Prior to opinion in that court transfer was granted and we determine the cause as though here

on original appeal. Mo. Const. art. V, sec. 10. The judgment is affirmed.

■ Defendant first challenges the sufficiency of the evidence and for reasons now discussed we find this challenge without merit. When examining the record to determine submissibility, we accept as true all evidence and inferences tending to support the verdict and disregard evidence and inferences to the contrary. *State v. Brown*, 660 S.W.2d 694, 698 (Mo. banc 1983).

Jill Allen testified she worked for defendant as a prostitute in the Golden Goddess Massage Salon and Bathhouse at Fenton, Missouri. She was introduced to defendant by a mutual friend and was advised by defendant during an interview on November 24, 1983, of the methods and operation of her business. Allen was told that new "clients" were to produce three pieces of identification and would listen to a 15–minute tape in which defendant explained, among other things, the price range. Defendant then related in detail the procedures for physical examination of the "client" for venereal disease, bathing the customer and instructions on how the massage was to be given. Defendant told Allen that after the massage the customer would "have his choice of either oral sex or intercourse or both" and that the sex acts were included in the price of the "massage." Defendant forbade her employees from requesting tips, but if offered, tips could be accepted. The prostitutes received specific instructions on handling of credit card and cash payments and each was to receive fifty percent of the money she "took in," from which defendant withheld certain amounts for taxes and other charges.

Allen further testified she was employed by defendant for nine weeks, beginning November 26, 1983, and on her initial day serviced six customers. Defendant personally assisted her with the first of those men and demonstrated the procedure she expected her employees to use in examining the customer for venereal infection. Defendant then bathed with the customer as she explained the proper method to Allen.

After defendant left, Allen massaged the customer with coconut oil and engaged in oral sex and intercourse.

Another State witness, Donald Jones, testified he was employed by Jefferson County law enforcement officials during November 1983 as an undercover agent to investigate prostitution and massage parlors in the county. Jones testified that when he went to defendant's place of business on Fiedler Lane he was met at the door by a girl named Lorie who directed him to remove his shoes. She then provided a tape for him to hear, informed him of the price schedule and told him to wait until someone was available. While he waited defendant entered the room and reiterated the information concerning prices. Shortly thereafter Lorie told Jones she could accommodate him. Jones paid her $75.00 and was led upstairs where Lorie undressed and instructed him to do the same. After examining him for venereal infection she bathed and massaged him, directed him to massage her in return, then engaged in sexual intercourse. During all this activity the bedroom door was partially open, and defendant entered the room while Jones was massaging Lorie. Jones further testified he could hear defendant in the hallway while he and Lorie engaged in sexual intercourse. He returned to the Golden Goddess on November 26 and similar events transpired. On that occasion his masseuse was a woman named Stevie, who also inspected him for venereal infection, bathed him, massaged him, then engaged in oral sex and intercourse.

The evidence clearly supports a finding that defendant had knowledge and control of and promoted acts of prostitution committed by her employees.

■ Defendant next complains the trial court improperly denied her motion for change of venue. She contends prejudicial pretrial publicity permeated the county and that the court abused its discretion because she "proved the truth of her allegations by competent evidence." In her appellate brief defendant relies on Rule 32.04 and section 545.490, RSMo 1986; however, her motion failed to meet the requirements of

either.[1] Rule 32.04(b) requires that an application for change of venue in felony cases must be filed not later than thirty days following arraignment. Defendant was arraigned July 30, 1984, but filed her motion for change of venue June 20, 1985, nearly ten months after the deadline imposed by the Rule. Further, her motion was not "supported by the *affidavit* ... of at least two credible *disinterested* citizens of the county where said cause is pending" as required by section 545.490.[2]

■ Perhaps recognizing these deficiencies, in her motion defendant relied on Rule 32.09(c), which provides that "nothing contained in Rules 32.01 through 32.09, inclusive, shall prohibit a judge from ordering a change of venue or change of judge when fundamental fairness so requires," and it is in the context of this provision that we examine defendant's contentions. *See State v. Carr,* 687 S.W.2d 606, 612 (Mo. App.1985). Although defendant complained of pretrial publicity in her motion, she did not introduce into evidence newspaper articles or media broadcasts pertaining to her or her business. The only indication of the existence or nature of the publicity surrounding this case was the testimony of Debbie Davison, a former employee of defendant who was one of five witnesses called by defendant at the hearing on the change of venue motion. Davison testified that defendant was "on the news a lot" along with "a lot of other places," and that "everybody seems to be down on not just [defendant] but other places, and *they're not. thinking her, they are thinking in general.*" (Emphasis added.) The other hearing witnesses, also friends or business associates of defendant, merely testified that it was their opinion defendant could not receive a fair trial in Jefferson County. The trial judge determined selection of a jury should be attempted and informed defendant that he would reconsider the motion during and after voir dire.

Responses of the array during voir dire were partially consistent with Davison's testimony, indicating that while most were generally aware of investigations of prostitution activity, none knew the defendant and only sixteen veniremen had heard of the Golden Goddess Massage Parlor. Two panel members, subsequently stricken for cause, expressed reservations concerning their ability to disregard outside information but further questioning revealed that the remaining venire panel members could make judgments based solely on evidence adduced at trial. One venireman subsequently indicated that he had formed an opinion about the case and was also stricken for cause; the remaining members, despite some knowledge of prostitution investigations acquired over a period of two years, had formed no opinion as to defendant's guilt. Significantly, defendant challenged for cause only the three panel members previously mentioned, did not object to the voir dire proceedings and made no attempt to renew her motion for change of venue prior to or at the conclusion of voir dire.

It is settled law that the decision to grant or deny a change of venue in cases such as this rests within the trial court's discretion, and its ruling will not be disturbed unless abuse of discretion is demonstrated. *State v. Boggs,* 634 S.W.2d 447, 457 (Mo. banc 1982). Further "[e]xposure to publicity is not deemed inherently prejudicial and a juror may be sworn if he is able to set aside any opinion formed from the publicity when he enters the jury box." *State v. Molasky,* 655 S.W.2d 663, 667 (Mo.App. 1983).

---

1. We note that Rule 32.03 is not implicated in this case because Jefferson County has a population in excess of 75,000. As of the 1980 census, Jefferson County had 146,183 inhabitants. *Statistical Abstract for Missouri, 1985.*

2. To the extent that the time requirements of Rule 32.04 may be inconsistent with those contained in section 545.470, the Rule supersedes the statute and the provisions of the Rule control. Rule 19.02; *State ex rel. Hutson v. McHaney,* 629 S.W.2d 645, 647 (Mo.App.1982). We note also that defendant did not file an affidavit stating the facts on which she grounded her application for change of venue had first come to her knowledge "since the last preceding continuance of the cause ..." as required by sec. 545.480.

The scanty evidence defendant introduced regarding the timing, nature and extent of the publicity in this case indicated the publicity pertained generally to prostitution investigations, not to defendant specifically, and the voir dire examination supports that conclusion. *See State v. Chaney,* 663 S.W.2d 279, 286 (Mo.App.1983). The veniremen indicated they had formed no opinion as to defendant's guilt or innocence and could reach a verdict based solely upon the evidence adduced at trial. Under the circumstances here, we conclude the trial court did not err in denying defendant's untimely and unsupported motion for change of venue, nor was there an abuse of discretion in declining to find "fundamental fairness" required that defendant be tried in a different venue. The record belies defendant's assertion that she was deprived of a fair trial and the point is denied.

Defendant finally asserts error in permitting informant Jones to testify regarding statements made by two of defendant's employees, "Lorie" and "Stevie," during Jones's visits to her place of business. Lorie and Stevie each made comments to Jones pertaining to the availability of several women as well as prices charged and offered a variety of instructions prior to and during the massage and sex acts. Defendant contends that those statements constituted inadmissible hearsay; however, the State argues that the testimony was admissible as declarations of co-conspirators made in furtherance of the objects of the conspiracy and we agree.

It is well-established that out-of-court statements of a defendant's co-conspirators, made during the course of the unlawful conspiracy and in furtherance of its objects, are admissible against the defendant. *Bourjaily v. United States,* —— U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978); *State v. Anding,* 689 S.W.2d 745, 753 (Mo.App.1985); *State v. Fuhr,* 660 S.W.2d 443, 447 (Mo.App.1983); *State v. Reagan,* 654 S.W.2d 636, 640 (Mo.App. 1983). For purposes of testing the admissibility of a co-conspirator's declarations, a conspiracy need not be charged in the indictment or information nor need the declarant be a coindictee or codefendant. *Anding,* 689 S.W.2d at 753 n. 5; *Fuhr,* 660 S.W.2d at 448. In such cases the State must adduce evidence independent of the coconspirator's statement establishing, by a preponderance of the evidence, that defendant and the declarant were members of a conspiracy and that the declaration was made during the course and in furtherance of the conspiracy. *Fuhr,* 660 S.W.2d at 447; *Reagan,* 654 S.W.2d at 640.[3] "On review, the appellate court's inquiry is limited to whether the trial judge had reasonable grounds to make his findings." *Fuhr,* 660 S.W.2d at 447.

We believe reasonable grounds existed here for the admission of the statements. The conspiracy between defendant, Lorie and Stevie was established by the testimony of Jill Allen and Donald Jones. It goes without saying that Allen's testimony concerning instructions given by defendant to her employees and the procedures employees were expected to follow contemplated and included acts of prostitution. Allen also stated Lorie and Stevie worked at the Golden Goddess and did "the same thing that [she] did." Additionally, Jones testified that defendant "[gave him] the rundown of prices" with Lorie present, that defendant walked into the room while he was massaging Lorie and that defendant was in the hallway outside the partially open bedroom door when he and Lorie en-

---

**3.** The United States Supreme Court recently held, in *Bourjaily v. United States,* —— U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), that Federal Rule of Evidence 801(d)(2)(E) allows the trial judge, in making a preliminary determination as to the existence of a conspiracy, to consider the out-of-court statement as well as independent evidence. *Id.* at 2782. The previously cited Missouri cases seem to indicate that under Missouri common law at least some evidence of conspiracy independent of the challenged statements must exist; however, they do not necessarily preclude consideration of the co-conspirator's declaration as well. In this case, though, we need not decide whether in light of *Bourjaily* the declarations could be used to prove the conspiracy because the independent evidence, discussed *infra,* was sufficient to establish its existence.

gaged in intercourse. The record is replete with evidence of conspiracy between defendant, Lorie, and Stevie. There can also be no doubt that the declarations in question were made during the course of the conspiracy and were intended to further its illicit goals.

The cases cited by defendant are distinguishable in that they involve instances in which no conspiracy existed between the defendant and the declarant [*see State v. Kirkland*, 471 S.W.2d 191 (Mo.1971); *State v. Shigemura*, 680 S.W.2d 256 (Mo. App.1984)] or in which the declarations were not made *during the course of* and *in furtherance of* the conspiracy. *See State v. Valentine*, 587 S.W.2d 859 (Mo. banc 1979); *State v. Hall*, 508 S.W.2d 200 (Mo. App.1974); *see also State v. Chernick*, 278 S.W.2d 741, 747–48 (Mo.1955). Defendant's point is denied.[4]

The judgment is affirmed.

All concur.

---

**4.** We note that the evidentiary standards for the admission of declarations of co-conspirators satisfy the requirements of the confrontation clause of the Sixth Amendment to the United States Constitution. *Bourjaily*, 107 S.Ct. at 2775; *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).