STATE of Missouri, Respondent,

v.

Dennis D. SMITH, Appellant.

No. 30280.

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1979.

Application to Transfer Denied Nov. 14, 1979.

Stanley I. Dale, St. Joseph, for appellant.

John D. Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

Appeal from jury conviction for assault upon a police officer while in the performance of his duties.

Appellant is a resident of the City of St. Joseph. At the time of this occurrence, he and his wife had been separated some two or three weeks. They had a six year old daughter, Stacy. Appellant had a son nine years of age by a previous marriage who lived with appellant. Appellant's wife and daughter Stacy had been living in Riverside and Kansas City. On August 2, 1977, the date of the offense, appellant's wife, by agreement, had returned to appellant's residence for the purpose of permitting appellant to visit with Stacy. It was understood appellant's wife would prepare the supper meal and appellant would be home around 5:30 or 6:00 p. m. Appellant, however, did not return home until between 8:30 and 9:00 p. m. Appellant had dined with busi-

ness associates at a local restaurant. During her wait for appellant, his wife had done some laundry. She found a woman's bra in the clothing. When appellant returned home, his failure to show for supper at the appointed hour and the inability to explain the presence of the bra became an issue of discussion. The evidence is not quite clear which of the two matters provided the greater point of contention, but nonetheless, the parties commenced to quarrel. This quarrel found appellant's wife going outside and locking herself in her automobile. Appellant followed her, but upon failing to persuade her to return inside, appellant returned to the inside of the residence for purposes of going to bed. Appellant's wife, a bit later, went back inside and according to her testimony, found appellant spanking Stacy for Stacy's having called the police. Appellant's wife testified Stacy was sent to bed in the bedroom. Another quarrel ensued, and appellant's wife noticed the phone was off the hook. She picked up the phone and held a brief conversation with a woman on the other end of the line. As the evidence will show, this other woman was Judy Harris, who testified for the state. At this point, appellant's wife testified she asked if a police car had been sent to the residence. Appellant's wife then stated appellant ordered her out of the house. She complied and returned to her automobile, which she drove across the street from appellant's residence.

More concerning the testimony of appellant's wife will be referred to, but at this juncture, it is necessary to summarize other evidence which depicts other events occurring simultaneously with the facts already outlined. During the first quarrel between appellant and his wife, 6 year-old Stacy had placed a call to the police and engaged herself in a conversation with one Judy Harris. Witness Harris asked several questions of Stacy, including her name, address and if anyone was being harmed. Stacy stated her father was outside and was going to bust her mother's head open with a rock (or words to that effect). Witness Harris asked to speak to appellant's son. The boy confirmed appellant was bothering

appellant's wife. Stacy returned to the phone and told witness Harris to forget the whole matter and not to send the police as she had previously requested. Stacy did not hang the phone back up and through the wonder of modern science, witness Harris could maintain an open line with the other phone instrument.

Witness Harris testified she heard a small female screaming and a male adult voice declare, "I'll kill them!" Subsequent to this, an adult female voice (which was appellant's wife) was heard by witness Harris, and the inquiry of whether a police car had been sent was made by appellant's wife. The entire conversation between all the parties was taped by the police department.

Appellant's wife, then being ordered out of the house by appellant, returned to her automobile without her daughter Stacy and moved the automobile across the street. Appellant's wife testified she wanted to leave with her daughter and appellant protested, wanting them to stay, but thereafter ordered his wife out of the house. At this point Stacy, according to the appellant and his wife, was in bed.

As appellant's wife parked her automobile, two police officers arrived on the scene. They parked their patrol car and met appellant's wife outside the residence. The evidence given by appellant's wife and the two officers, at this point, is not only critical to the issues herein, but is the most controverted part of the testimony.

Appellant's wife testified she encountered the officers just a few feet from the front porch of appellant's residence. She stated she identified herself to the officers and that she recognized Officer DeClue and Officer Wood. She testified there was further conversation to the effect, "Is that Denny inside?", to which she responded, "Yes". She testified there was no further conversation between the officers and herself. She stated she went inside the house, passed appellant who was standing alone just inside the door and proceeded to the bedroom, where her daughter Stacy was lying on the bed. She testified that mo-

ments later she observed the two officers enter the house, confront appellant, and after a struggle, subdued appellant. She testified Officer DeClue was carrying a shotgun. She denied ever having a conversation with the officers concerning any weapons, either owned by appellant or in his residence.

The officers' testimony stated they arrived on the scene, encountered appellant's wife in the street and after she identified herself, she asked them to please help her get her daughter from inside the house. The officers also stated the wife, in response to inquiry if appellant had a gun, declared, "Yes, I think so." The officers testified that upon their arrival, they observed appellant's wife yelling at a small boy who was running down the street and heard appellant's wife yell, "Come back, please come back, I promise daddy won't hurt you anymore."

The officers' testimony related the following series of events. After appellant's wife had made the statement about a gun, Officer DeClue went to the patrol car and returned to the front of appellant's residence with a shotgun. The officers accompanied appellant's wife to the front door. All was quiet from inside the residence at this time. DeClue then opened the screen and knocked on the front door. At this point, appellant's wife said, "Here, I will open it for you," and did open the door. When the door was pushed open, appellant was standing a few feet inside with his daughter, Stacy. Appellant had one hand on Stacy's shoulder and the other hand in a raised or striking position. The officers stepped inside and appellant profanely ordered them out of his house. Appellant asked them what they were doing there, to which they answered that they were answering a disturbance call in response to the police dispatcher.

When the officers would not leave, a physical encounter took place between the officers and appellant. The evidence is controverted as to who provoked the physical encounter, but it resulted in appellant's being subdued and taken to the local bastille.

There was evidence of a further confrontation between appellant and law enforcement officers at police headquarters.

The jury, after hearing the evidence, found appellant guilty as charged and the court imposed a fine of $1,000.00. Motion for new trial was timely filed, overruled and this appeal followed.

Appellant alleges three points of error. He alleges the court erred in its refusal to sustain appellant's motion to suppress evidence because appellant's arrest was improper in being without warrant and that the officer's entry was a trespass; the trial court erred and abused its discretion in permitting the playing of the taped telephone conversation before jury because the tape was inflammatory, repetitive and cumulative; the court erred in its refusal to submit appellant's requested instruction relative to said tape; and finally, the court erred in not declaring a mistrial because of the alleged inflammatory remarks within the prosecutor's closing argument.

Appellant does not question the sufficiency of the evidence.

On appellant's first point of error, it must be noted the trial court afforded appellant a hearing upon his motion to suppress. The trial court concluded correctly when it overruled appellant's motion. In the first instance, arrest by law enforcement officers is not always required to be by warrant. Rather, the question is premised upon whether a warrantless arrest was premised upon probable cause, *Tyler v. Peterson*, 315 F.Supp. 338 (E.D.Mo.1970); *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975); *State v. Gant*, 490 S.W.2d 46 (Mo. 1973); *State v. Johnson*, 463 S.W.2d 785 (Mo.1971); *State v. Parker*, 458 S.W.2d 241 (Mo.1970). That probable cause exists and that it must be reasonable, necessarily depends upon the facts of each case, *State v. Seymour*, 438 S.W.2d 161 (Mo.1969).

Appellant contends the facts herein do not support probable cause for arrest of appellant. On this point, the state responds by alleging appellant's motion to suppress was misdirected since appellant was

charged and convicted pursuant to § 557.-215, RSMo 1969 [1] (striking a police officer in performance of his duties) and hence, as the state contends, the arrest of appellant need not be lawful. For purposes of this appeal, the question posed by the state is not taken up because the facts herein speak for themselves to render disposition of appellant's first point. The state would have this court conclude the police had probable cause to arrest appellant once appellant had struck the police officer. This court concedes that the authority relied upon by the state, *State v. Brothers*, 445 S.W.2d 308 (Mo.1969); *State v. Rodriguez*, 484 S.W.2d 203 (Mo. 1972) and *State v. Bradley*, 515 S.W.2d 826 (Mo.App.1974), while still valid law in our state, is employed by the state herein in a misdirected fashion and the question on appellant's first point is better resolved in consideration of the evidence as to whether the arresting officers acted upon probable cause in effecting a warrantless arrest during which the offense for which appellant was convicted occurred.

■ The pertinent evidence, in summary, dispositive of appellant's first point is that a phone call was received from the 6 year-old daughter of appellant claiming appellant was threatening harm to appellant's wife. This was confirmed by appellant's son. There was also evidence that appellant's wife, over the phone, asked if a patrol car had been dispatched to the residence. Evidence further established a patrol car had been directed to appellant's residence under advice that bodily harm had been threatened to persons at appellant's residence.

Although the evidence was controverted as between appellant's wife and the police officers, the evidence establishes the officers were, upon their arrival at the scene, acting with probable cause to believe a felony (assault) was in progress or had been committed at the residence of appellant.

The evidence clearly supports the action of the trial court that the warrantless arrest was based upon probable cause and there was no unlawful trespass by the police officers. Hence, denial of appellant's motion to suppress was not error and point one is ruled against appellant.

■ On the second point of error, it must be pointed out that state's witness Harris testified to the telephone conversation contained on the tape. A hearing outside the presence of the jury was held regarding the playing of the tape for the jury. The trial court, over objection, permitted the jury to hear the tape. The tape itself was never introduced into evidence. Appellant alleges the trial court erred in permitting the playing of the tape because it was inflammatory, repetitious and cumulative. The admission of evidence as to things relevant and material is within the discretion of the trial judge and this court cannot substitute its judgment on the question of admissibility, but may only review that question as to whether the trial judge abused his discretion. *State v. Harlston*, 565 S.W.2d 773 (Mo.App.1978).

■ The evidence fails to establish that the playing of the tape was inflammatory or that because it was played, it inflamed the jury against the appellant. That portion of appellant's allegation has no merit. The court is left with the determination of whether the trial judge abused his discretion on the premise that the playing of the tape was cumulative and repetitious and if as a result, that appellant's rights to a fair trial were prejudiced. The trial judge has the discretion relative to the admission of evidence and this includes cumulative evidence, *State v. Wintjen*, 522 S.W.2d 628 (Mo.App.1975); *State v. Mitchell*, 554 S.W.2d 581 (Mo.App.1977). This latitude, which is permitted the trial court, is premised upon the trial court's authority to exercise its judgment as to the relevancy of such evidence and will not be disturbed on review unless abuse of that discretion is clearly shown by the evidence. While most of the cited authority on this point directs

1. Effective January 1, 1979, this section was repealed by the new criminal code and is now reassigned to § 565.060 by the disposition table.

itself to photographic evidence, logic dictates the same basic principle is applicable to bona fide audio voice recordings.

The taped conversation questioned herein obviously was relevant to afford the jury with facts so the jury could determine whether or not the officers were engaged in the discharge of their lawful duties.

While appellant did not raise the question of the tape being hearsay on appeal, he nevertheless did object upon trial to the tape on that basis. In passing, it should be noted the playing of the tape did not violate the prohibition against hearsay because it was not admitted for its intrinsic truth, but as a relevant fact as to why the police officers went to appellant's residence. The introduction of this evidence, for the reasons set forth, was a proper use thereof, *State v. Trotter*, 536 S.W.2d 877 (Mo.App. 1976). On this point, appellant requested an instruction, which stated, "The Court instructs you that the tape recorded message is not in evidence in this case and you are not to consider it in your deliberations."

■ The court refused to submit this instruction. The action by the trial court was correct on this instruction since the instruction, as drafted, would have incorrectly directed the jury on the question of the tape as part of the evidence. For the foregoing reasons, point II is ruled against appellant.

■ Appellant's final point is directed to the remarks of the prosecutor in final argument. Reading of the record reveals in his rebuttal argument the prosecutor made the remark that, "It was not a question of overreaction, certainly not on the police officers' part. What could they have overreacted to, a wife beater? Did they overreact to a wife beater?"

At this point, defense counsel objected and the court admonished the prosecutor and instructed the jury to disregard his statements. Appellants's request for a mistrial was overruled.

In appellant's argument upon this final point, he properly alleges that the remarks of the prosecutor relate to facts not in evidence, but upon his allegation that such remarks inflamed the jury to his prejudice, there is insufficient evidence to support his claim.

■ Review of argument of counsel is weighed upon whether upon ruling on the question at trial, the trial judge abused his discretion in the matter. Unless there was an abuse of discretion which resulted in prejudice to appellant, the court's ruling will not be disturbed. *State v. Frazier*, 522 S.W.2d 46 (Mo.App.1975).

Upon the reading of the transcript herein, it is shown that the prosecutor made no reference to appellant as a wife beater in the first part of his closing argument. The record further reveals the defense argument was premised upon the overreaction by the police officers.

Careful reading of the transcript shows the prosecutor's remarks, in his final argument, used such terms to rebut the inference of defense argument. The prosecutor was admonished properly by the court and the jury was instructed to disregard his remarks. There is no showing that appellant was denied a fair trial because such remarks were to that extent prejudiced. The court, within its discretion, correctly addressed the issue upon timely objection by appellant's counsel.

Upon failure to show that the prosecutor's remarks resulted in a prejudicial trial and that there was an abuse of discretion by the trial judge, point III is ruled against appellant.

For the reasons set forth herein, the verdict of the trial court is in all respects affirmed.

All concur.