**STATE of Missouri, Respondent,**

v.

**James COLENBURG, Appellant.**

No. 54516.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 6, 1989.

Motion for Rehearing and/or Transfer
To Supreme Court Denied
July 5, 1989

Application to Transfer Denied
Aug. 1, 1989.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Michael D. Burton, St. Louis, for appellant.

SIMON, Judge.

James Colenburg, defendant, was convicted by a jury of murder in the second degree, in violation of § 565.021.1(2) RSMo 1986 (all further RSMo references are to 1986 unless otherwise noted) and leaving the scene of an accident, in violation of § 577.060. Defendant was sentenced to concurrent terms of imprisonment of fifteen years and five years respectively.

On appeal, defendant contends that the trial court erred in: (1) denying his motion to dismiss on the grounds of prosecutorial vindictiveness because the evidence showed that when he exercised his constitutional right to proceed to trial on the state's charge of involuntary manslaughter, the state entered a memorandum of nolle prosequi on the day of trial and then successfully sought an indictment of murder in the second degree; (2) denying his motion to dismiss on the grounds of the unconstitutional application of § 565.021.1(2), the felony murder statute; and, (3) in overruling his motion in limine and in allowing testimony from witnesses pertaining to evidence of another crime which was unduly prejudicial to defendant. We affirm.

On appeal, evidence and its reasonable inferences are examined in a light most favorable to the verdict and all contrary evidence is disregarded unless it supports the verdict. *State v. Allen,* 684 S.W.2d 417, 419[1] (Mo.App.1984).

Applying this standard, the following is revealed from the evidence. On July 7, 1986, defendant went to visit a friend, Tabbie Allen, at Allen's house at 4914 Beacon Street. Defendant drove a blue 1976 Chevrolet Caprice Classic (blue Caprice) to Allen's house and parked it across the street. Later, when defendant left Allen's house driving the blue Caprice, the victim, Answar Harris, a two-year old, suddenly ran into the middle of the street in front of his home at 4961 Beacon Street. Defendant struck the child and left the scene of the incident. Answar was taken to the hospital where he died three days later from severe head injury.

Following the collision, defendant drove to Percy Gilliam's home. Gilliam and defendant then drove the blue Caprice to Gilliam's mother's home. Present at Gilliam's home were: defendant, Percy Gilliam, Gilliam's mother (Kathryn Williams), Gilliam's sister (Lovie Williams), and a friend of the family, Grace Connors. After defendant left Kathryn Williams' home, he was not seen for sometime. Lovie and Kathryn Williams and Percy Gilliam all testified that at Williams' house defendant told them he hit a baby, that his front fender was dented and that there was blood on the fender that needed to be wiped off. Lovie Williams also testified that prior to the accident, she heard defendant and others talking about the blue Caprice they had stolen.

In August, 1986, Gilliam owned a 1977 Dodge van and a blue and white 1976 Chevrolet Caprice (blue and white Caprice). Gilliam's blue and white Caprice was similar to the blue Caprice driven by defendant when he struck Answar; the only difference being the color. Gilliam agreed to trade his Dodge van for the blue Caprice on defendant's condition that Gilliam switch the vehicle identification numbers (VIN) of the two Caprices.

On August 18, 1986, the police investigated both the blue and the blue and white Caprices on a tampering with an auto assignment. Police noticed the VIN numbers had been altered on the cars. Police questioned Gilliam about the alteration. Gilliam

said he purchased the cars from his cousin. Later, the police discovered the blue Caprice had been reported stolen. Thereafter, the police arrested Gilliam for receiving stolen property.

On September 3, 1986, Gilliam signed a warning and waiver form which contained the following statement:

I, Percy Gilliam, want to make the following statement: I paid my cousin for the 1976 Chevy white and blue. It stopped running on me so I traded with James Colenburg for a '76 Chevy, blue, and I took the IVN [sic] numbers off of my Chevy and put them on his Chevy before he sold it to me.

Later, Gilliam made a tape recorded statement telling police what he knew about defendant and the accident which resulted in Answar's death.

Subsequently, defendant was arrested and indicted on charges of involuntary manslaughter and leaving the scene of an accident. However, on May 13, 1987, the day of defendant's trial, the state entered a memorandum of nolle prosequi on the charges of involuntary manslaughter and leaving the scene of an accident. On May 29, 1987, the state reissued the cause against defendant charging him with murder in the second degree and leaving the scene of an accident and the grand jury reindicted defendant on both counts.

Trial was held on January 7, 1988. Gilliam agreed to testify against defendant at trial in exchange for pleading guilty to the misdemeanor of tampering in the second degree. Harold Gould testified that the blue Caprice belonged to his father who had reported it stolen in Collinsville, Illinois on December 3, 1985. A jury convicted defendant on both counts. Further facts will be set forth as necessary.

In defendant's first point on appeal, he contends the trial court erred in denying his motion to dismiss on the grounds of prosecutorial vindictiveness because the evidence showed that when defendant exercised his constitutional right to proceed to trial on the state's charge of involuntary manslaughter, the state entered a memorandum of nolle prosequi on the day of trial

and then successfully sought an indictment of murder in the second degree when there was no new evidence, thereby punishing defendant, denying him the right to a fair trial with due process.

The record does not reflect the exact date defendant was originally arrested and indicted on the charges of involuntary manslaughter and leaving the scene of an accident, however, testimony reveals it was sometime in late summer, early fall, 1986. Gilliam was also arrested about this time and informed police that he thought defendant was involved in an accident while driving the blue Caprice. However, at a pretrial hearing prosecutor testified that it was not until October, 1986, that she was instructed by her superior to seek reindictment for murder in the second degree pursuant to § 565.021.1(2), the felony murder statute, with the underlying felony being tampering in the first degree. The record does not reflect the reason for her superior's instruction.

The prosecutor and defendant entered into plea negotiations. The prosecutor offered five years imprisonment for a plea of guilty to involuntary manslaughter. The prosecutor informed defendant of the possibility of indictment on murder in the second degree but informed defendant that the offer of five years for a guilty plea of involuntary manslaughter remained open until such an indictment was issued. Defendant continued to express his desire to go to trial. Defendant prepared for trial, set for May 13, 1987, on the original counts of involuntary manslaughter and leaving the scene of an accident.

On the day of trial, the prosecutor issued a nolle prosequi on the original indictment and reissued an indictment against defendant on murder in the second degree and leaving the scene of an accident. The prosecutor attributed the failure to reindict defendant sooner to an excessive case load, time restraints, vacation leave and a mistake as to the date of defendant's trial.

Defendant relies on *State v. Quimby*, 716 S.W.2d 327 (Mo.App.1986). In *Quimby*, Quimby was originally charged with a

misdemeanor. On the day of trial, Quimby indicated his intention to request a jury trial. The prosecutor responded, "If you request a jury trial, I'll file a Class 'B' felony of burglary first degree." *Id.* at 328. Quimby demanded a jury trial and the misdemeanor charge was dropped and a complaint was filed by the prosecutor charging Quimby with the felony of first degree burglary. Quimby was subsequently convicted of the felony. Quimby appealed alleging the prosecutor instigated the felony charge solely in retaliation for Quimby's attempt to exercise his right to a jury trial. *Id.*

Our brethren in the Western District stated:

> There is no presumption [of vindictiveness] if the realignment of charge occurs in the process of plea bargaining or in absence of some evidence of actual vindictiveness calculated to thwart exercise by an accused of a due process right. That an accused may, however, be entitled to relief in a proven case of prosecutorial retaliation is unmistakably retained by the following observation in [*United States v. Goodwin,* 457 U.S. 368, 384, 102 S.Ct. 2485, 2494, 73 L.Ed.2d 74 (1982)]: 'In declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's changing decision was motivated by a desire to punish him for doing something the law plainly allows him to do.'

*Id.* at 330[1, 2].

In *Quimby,* the court determined the evidence conclusively established prosecutorial vindictiveness in the form of the threat by the prosecutor to increase the charge if Quimby requested a jury to try a misdemeanor case. Further, there was no evidence of any plea bargaining and the state presented no factual basis on which it could be contended that the felony charge was filed other than in retaliation for the request of a jury trial. *Id.* at 330–331[1, 2].

Here, there is no evidence establishing that the prosecutor threatened to indict defendant on a greater offense if he did not plead guilty to the lesser charge of involuntary manslaughter. Plea negotiations between defendant and the prosecutor remained open until the prosecutor entered a nolle prosequi on defendant's original charge. Defendant was aware throughout plea negotiations of the possibility of an indictment on murder in the second degree. Although we do not condone the prosecutor's delay in waiting until the day of trial to enter a nolle prosequi on the original indictment, the prosecutor was free to indict defendant on murder in the second degree prior to trial. We find no evidence to substantiate that the decision to indict on a greater offense was in retaliation to defendant's desire to proceed to trial. Defendant's first point is not meritorious.

■ In his second point, defendant contends that the trial court erred in denying his motion to dismiss on the grounds of the unconstitutional application of § 565.021.1(2), the felony murder statute, in that the statute was not intended to apply to an individual, in committing the felony of tampering in the first degree, when he no longer had the mens rea at the time the death occurred and he could not have reasonably foreseen the death.

Section 565.021, the felony murder rule, provides in pertinent part:

1. A person commits the crime of murder in the second degree if he:

\* \* \* \* \* \*

(2) Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

■ The felony murder rule permits the felonious intent necessary to a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony. *State v. Rumble,* 680 S.W.2d 939, 942[2, 3] (Mo. banc 1984). Here, the blue Caprice was reported stolen in December, 1985. Ans-

war died in July, 1986. It is defendant's contention that it is unconstitutional to apply the felony murder statute to him through a felony which occurred nearly seven months prior to the accident because he no longer had the felonious intent.

The state contended that defendant committed the felony of tampering in the first degree, under Section 569.080, which provides in pertinent part:

1. A person commits the crime of tampering in the first degree if:

\* \* \* \* \* \*

(2) He knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof.

2. Tampering in the first degree is a class C felony.

Thus, in order to prove that defendant committed the felony of tampering in the first degree and thus have the felony murder statute attach, the state had to prove the elements of tampering in the first degree; i.e., that defendant knew he was operating the car without the consent of the owner on July 7, 1986, the date Answar was struck.

Two cases are informative in this respect. In *State v. McIntyre*, 735 S.W.2d 111 (Mo.App.1987), McIntyre went to an automobile dealership on the pretense of test driving a new car. McIntyre took two sets of similar keys. When he was finished test driving the car, he returned only one set, keeping the set which operated the car he test drove. Later he drove away in that car. Two days later, police apprehended McIntyre when they saw him driving the stolen car. McIntyre was convicted of tampering in the first degree. *Id.* at 112.

Also, McIntyre was convicted of stealing the same motor vehicle. In *State v. McIntyre*, 749 S.W.2d 420 (Mo.App.1988), McIntyre appealed on the grounds of double jeopardy contending he had already been convicted of tampering in the first degree for that car. However, our court held that the conviction for tampering on the day he was apprehended was not a part of the stealing that occurred two days prior. Hence, double jeopardy did not attach. *Id.* at 422[1].

Defendant contends that because the car was stolen almost seven months prior to the incident which resulted in Answar's death, the underlying felony, having already been completed, was too remote in time to the death and; therefore, it is unconstitutional to apply the felony murder statute to defendant. Although *McIntyre*, 749 S.W.2d at 420, addresses a double jeopardy issue, its principle is clearly analogous. Our court stated in *McIntyre*, 749 S.W.2d at 422[1], that a defendant can be convicted of both stealing and tampering in the first degree of the same car. Thus, the crime of tampering in the first degree did not end with the original taking.

Here, if the state proved that defendant knowingly operated an automobile without the owner's consent at the time of the incident which resulted in Answar's death, then defendant could be found guilty of tampering in the first degree, regardless of when the car was stolen. The charges against defendant were submitted on the following instructions, which provided in pertinent part:

### INSTRUCTION NO. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed tampering in the first degree, as submitted in Instruction No. ——, and

Second, that Answar Harris was struck by the 1976 Chevrolet Caprice operated by defendant, and

Third, that Answar Harris was killed as a result of the perpetration of that tampering in the first degree,

then you will find the defendant guilty under Count I of murder in the second degree.

### INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on July 7, 1986, in the City of St. Louis, State of Missouri, the defendant knowingly operated a certain 1976 Chevrolet Caprice, being an automobile possessed by Herman Gould, and

Second, that he operated the automobile without the consent of the owner, and

Third, that he operated it knowing that he did so without the consent of the owner,

then you will find the defendant has committed tampering in the first degree.

The state presented sufficient evidence to support the submission of the above jury instructions. Harold Gould testified that in December, 1985, he and his father drove to a movie in Collinsville, Illinois in his father's blue Caprice. When they came out of the theatre, they discovered the car was missing. They reported the car stolen. He also testified that his father never gave permission to defendant to drive his car. Lovie Williams testified that she heard defendant and other friends talking about the blue Caprice they had stolen. Additionally, Gilliam testified that as a condition to switching cars, defendant wanted to change the VIN numbers of the two Caprices. Defendant did not testify at trial. However, the reasonable inference, drawn from this evidence, is that defendant knew he was driving the blue Caprice without the consent of the owner and therefore had the requisite mental state for tampering in the first degree, when he struck Answar.

The felony murder rule is a rule of strict liability. No other mental state on the part of defendant need be shown other than to commit or participate in the underlying felony. *State v. Norwood,* 721 S.W.2d 175, 179[7, 8] (Mo.App.1986). Clearly, the state met its burden in proving defendant had the requisite mental state for the felony of tampering in the first degree at the time of the incident. No other mental state needed to be proven. Thus, defendant's second point is without merit.

■ Finally, defendant contends in his third point that the trial court erred in overruling his motion in limine and in allowing the state to elicit testimony from its witnesses pertaining to the alleged speeding of defendant at the time when Answar ran into the street because such testimony is evidence of another crime, which unduly prejudiced defendant.

Defendant's motion in limine to prohibit the state from mentioning or eliciting any testimony that pertained to defendant's speeding in the blue Caprice was overruled. Several of the state's witnesses testified as to the rate of speed defendant was driving at the time of the incident and as to the speed limit on Beacon Street. We have reviewed the record and find that when such testimony was offered during trial, defendant failed to object to its admission. It is well established that when a motion in limine is denied and the evidence is subsequently offered at trial, defendant must object at trial to the admission of the evidence. This rule is strictly applied because the trial judge should be given an opportunity to reconsider his prior ruling against the backdrop of the evidence adduced at trial. *See: State v. Sandusky,* 761 S.W.2d 710, 713[2] (Mo.App.1988). Defendant, by failing to repeat his objection at trial, failed to preserve this point for review. Thus, this point is limited to plain error review.

Under the plain error rule, we will set aside a trial court ruling only when it affects the rights of the defendant to the extent of manifest injustice or miscarriage of justice if left uncorrected. *State v. Sandles,* 740 S.W.2d 169, 177[10, 11] (Mo. banc 1987). The defendant bears the burden of demonstrating that the action of the trial court resulted in manifest injustice or miscarriage of justice. *State v. Groves,* 646 S.W.2d 82, 83[1, 2] (Mo. banc 1983).

Defendant contends that the state presented testimony to establish he was speeding at the time of the incident and such testimony is inadmissible as evidence of another crime. Generally, evidence of other crimes is inadmissible. However, when the criminal conduct is part of a continuous occurrence intimately connected with the crime for which the defendant is being tried, it is admissible. *State v. Kenley,* 701 S.W.2d 185, 186[1] (Mo.App.1985).

References to defendant's rate of speed were made by witnesses describing the incident on Beacon Street. Their testimony only related what they saw and referred only to the defendant's rate of speed in the context of the striking of Answar. The trial court did not err in allowing such testimony.

Judgment affirmed.

DOWD, P.J., concurs.

CARL R. GAERTNER, J., dissents in separate opinion.

CARL R. GAERTNER, Judge, dissenting.

I respectfully dissent. The author of the majority opinion, with unassailable logic, has demonstrated that defendant was in the act of perpetrating the crime of tampering in the first degree at the time he caused the death of Answar Harris. However, I believe the application of the felony murder rule, whereby the culpable mental state for the commission of one felony is substituted for the absent intention to perpetrate a homicide if the death occurs as a natural consequence of the intended felony, requires more than mere concurrence in time.

The ancient maxim "an evil intention and an unlawful action must concur in order to constitute a crime" is stated as a general principle of criminal liability in § 562.016 RSMo.1986, "a person is not guilty of an offense unless he acts with a culpable mental state ..." In discussing this concurrence between action and intention it is stated in Perkins and Boyce, Criminal Law 3rd Ed. (1982) page 933:

> One error to be avoided is the false notion that "concurrence", as here used, means no more than mere coincidence, because the actual requirement is that the two elements of crime must be "brought together" in the sense of a causal relation between the mens rea and the *actus reus*. Stated in other words the *actus reus* must be attributable to the mens rea, and if this relation is clearly shown it is unimportant that the two were not present at the same time,

whereas coexistence is not sufficient if the causal relation is lacking.

Section 565.021 RSMo.1986 carries out the requirement of a causal relationship between the commission of the underlying felony and the homicide by requiring that the death occur *"as a result* of the perpetration or attempted perpetration of such felony or immediate flight" therefrom. Because the evidence in this case shows only a coincidence in time rather than a causal relationship between the driving without the owner's consent and the killing of the child, I do not believe the State proved a submissible case of murder second degree. Therefore, I must dissent.