**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ira JOHNSON, Defendant–Appellant.**

No. 52453.

Missouri Court of Appeals, Eastern District, Division Three.

June 20, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Application to Transfer Denied Sept. 12, 1989.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Mary E. Dockery, Asst. Public Defender, Clayton, Shawn A. Goulet, Public Defender, Union, for defendant-appellant.

SIMON, Judge.

Ira Johnson, defendant, appeals his conviction by a jury of burglary in the second degree pursuant to § 569.170 RSMo 1978. Defendant was sentenced as a persistent offender to a term of fifteen years imprisonment.

Defendant originally appealed his conviction on the grounds that the trial court erred in: (1) overruling his request to discharge the jury and impanel a new jury when the prosecutor used his peremptory challenges to exclude members of defendant's race from the jury and failed to give racially neutral explanations for his actions; and, (2) failing to sustain his motion for judgment of acquittal when the prosecutor failed to establish proof of ownership or occupancy of the premises at 9431 Olive Street Road, an essential element of the crime with which defendant was convicted.

Our court, in *State v. Johnson*, 744 S.W.2d 879 (Mo.App.1988), entered an order of remand on defendant's original appeal stating:

> We must remand this case to the trial court for an evidentiary hearing to determine whether the prosecutor used his peremptory strikes in a discriminating manner. The trial court is to certify to this court a record of the hearing and its findings of fact and conclusions of law so that we can take appropriate action consistent with Batson [v. Kentucky, 106 S.Ct. 1712 (1986)].... We will address appellant's other point, if necessary, at that time.

*Id.* at 881[2]. The trial court, having complied with our directions, has provided a record of the evidentiary hearing and its findings of fact and conclusions of law. Thus, we now address defendant's contentions on appeal.

In addition to his second point from his original appeal, defendant contends the trial court erred in its findings of fact and conclusions of law in holding that the prosecutor provided racially neutral reasons for using his peremptory strikes. We affirm.

On appeal, the evidence and its reasonable inferences are examined in a light most favorable to the verdict and all contrary evidence is disregarded unless it supports the verdict. *State v. Allen*, 684 S.W.2d 417, 419[1] (Mo.App.1984).

On April 30, 1984, Bess Goodman called the City of Olivette Police Department when she saw from the kitchen window of her second floor apartment at 9431 Olive

Street Road a young black man going in and out of the entrance of the apartment garages at 1100 Indian Trails Drive and the apartment garages at 9431 Olive Street Road. Before the police arrived, Ms. Goodman saw another person (she was unable to determine if the person was male or female) talking to the young man. At trial, Ms. Goodman testified that she was able to see them from her second story apartment because the back yard of her apartment meets the back yard of the apartment at 1100 Indian Trails Drive, and both have garages in the back.

Minutes after Ms. Goodman called, two City of Olivette police officers arrived at the apartments at 1100 Indian Trails Drive. The police officers found two males standing in front of a door of an apartment on the second floor. No one was home at the apartment. The police officers questioned the men as to what they were doing and how they got there. They responded by saying they were looking for Mary Wilson and they had arrived by bus. The officers led the two men outside; one officer stayed with the two, the other went to investigate the basement and garage area. The investigating police officer came back with a tire tool and a screwdriver. Additionally, he informed the other officer that Mary Wilson could not be found nor was she a resident at the apartments. The two men were taken to the police station, placed under arrest for possession of burglary tools, and given their Miranda warnings. At the station, their possessions were taken for inventory purposes. Among defendant's possessions was a set of keys. The tire tool and the screwdriver were given to the detectives for fingerprinting.

Later, the police officers went back to the site to look for any break-ins. In the garage at 9431 Olive Street Road, three storage lockers were open. Of the three, two had broken locks and the door of the other was open. There was also a Ford Maverick with a St. Louis City sticker on the windshield parked in the garage near the storage lockers at 9431 Olive Street Road. The car was locked but in the back seat a dustbuster (a small hand held vacuum) could be seen. One of the lockers

that had been broken into, which belonged to David G. Meador, contained a charging base for a dustbuster but the dustbuster was missing. Later, the police officer discovered that the car keys taken from defendant at the police station unlocked the car found in the garage.

Detective Tom P. Kletzker, Jr., of the City of Olivette' Police Department, testified that, after defendant was given his Miranda warnings, he indicated he wanted to talk. Initially, defendant explained his purpose for being at the apartments on April 30, 1984, was to look for an individual named Mary Wilson. However, when Detective Kletzker told defendant that his fingerprints matched a fingerprint taken off a victim's storage locker, defendant admitted that he, along with Quinten Johnson, opened the unlocked storage locker and broke into the two other lockers using a screwdriver to pry open the locks. He also informed Detective Kletzker that Quinten Johnson took the dustbuster, found in defendant's car, from one of the lockers. Defendant was charged by information with three counts of burglary in the second degree. At trial, a jury convicted defendant of one count of burglary in the second degree. The count on which he was found guilty pertains to the storage locker of David G. Meador, at 9431 Olive Street Road. Defendant was sentenced as a persistent offender to fifteen years imprisonment. Further facts will be enumerated as the need arises.

Initially we address defendant's contention that the trial court erred in its findings of fact and conclusions of law in holding that the prosecutor provided racially neutral reasons for using its peremptory strikes.

Our Supreme Court in *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), provides guidance:

> The ultimate burden of persuasion lies with and never shifts from the defendant.... A defendant may ... establish a prima facie case of discrimination by showing that (1) defendant is a member of a cognizable racial group, (2) that the

prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of race.... Defendant's establishment of a prima facie case creates a rebuttable presumption that the prosecutor exercises his peremptory challenges in a discriminatory manner.... The burden of production then shifts to the State to rebut the presumption of discrimination by coming forward with a neutral explanation for challenging black jurors.... The proffered neutral explanation must give a clear and reasonably specific explanation of the State's legitimate reasons for exercising the challenges.... If the State comes forth with a neutral explanation, the presumption raised by the prima facie case is rebutted.... Defendant now has the obligation to demonstrate that the State's explanations are merely pretextual and, thus, not the true reason for the use of the State's peremptory challenges. (Citations omitted.)

*Id.* at 63–64[13]. Additionally, *Antwine, supra,* set forth the standard for appellate review of *Batson* issues:

A finding of discrimination, or a finding of no discrimination, is a finding of fact.... Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.... A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.... (Citations omitted.)

*Id.* at 66[17].

██ Keeping these principles in mind, we turn to defendant's point. Defendant is black. Four venirepersons out of twenty-four were black. Three of the four black venirepersons were struck by the prosecutor using his peremptory challenges.

These three were: (1) Thomas Graham (juror number 12); (2) Thomas Terry (juror number 15); and, (3) Louise Stovall (juror number 23). Defendant only challenges the prosecutor's striking of Terry and Stovall. In oral argument, defendant's counsel stated that the prosecutor had a legitimate reason unrelated to race for striking Graham. Further, defendant does not allege any error in his brief as to the prosecutor's striking of Graham.

At the close of voir dire, defendant objected to the jury on racial grounds. The prosecutor at the time was not required to show the reasons for striking the black venirepersons. However, our court remanded for the purpose of an evidentiary hearing to determine whether the prosecutor used his peremptory strikes in a discriminatory manner. Pursuant to this, the trial court set forth its findings of fact and conclusions of law which provided in part:

(1) The prosecutor struck juror number twelve [Thomas Graham] because the juror thought he knew the defendant. Further, juror number twelve was the only venireperson who knew the defendant....

(3) The State's reasons for striking juror number fifteen [Thomas Terry] were because of his past contacts with the police which may have been a confrontational nature due to his past activities in civil rights marches. Further the State indicated that juror number 19 was also struck because of his contacts with the police....

(5) The State struck juror number twenty-three [Louise Stovall] because she did not have any identifiable source of income and the prosecutor felt she may tend to be sympathetic towards the defendant. Further, the state struck juror number twenty-seven for similar reasons....

(6) In the absence of a showing that the state's explanations for its peremptory strike[s] were a pretext for discrimination, the Court accepts the State's reasons as a neutral and valid explanation.

The trial court concluded that the defendant failed to show that the state's explanations were a pretext for discrimination.

A thorough review of the evidentiary hearing transcript and the trial transcript reveals the following: of the nine witnesses the state presented at trial, seven were police officers or detectives. The prosecutor testified that he struck Thomas Terry because Terry indicated that he had some dealings with the police officers, specifically in the marches in the '50's and '60's. The prosecutor testified that he struck Terry because he felt Terry might not have had a very good relationship with the police officers as a result of his involvement in the marches. The prosecutor also struck Michael Olszewski (juror number 19), a white venireperson, for a similar reason. Olszewski indicated that he was satisfied with police work seventy-five percent of the time but not twenty-five percent of the time. The prosecutor testified that he felt Olszewski would also have problems with the police.

The prosecutor testified that he struck Louise Stovall because he did not like her responses to his questions, specifically when he asked her about any contacts with the police or burglaries of her dwelling. Further, he testified that he struck her because she was a widow with two children, unemployed and appeared to have no identifiable source of income. Also, he struck her based on potential sympathy she might have for a defendant being charged with burglary. Evidence reveals that the prosecutor also struck Marion Weir (juror number 27), a white venireperson, because she was retired and had no identifiable source of income or employment.

In determining whether the prosecutor's explanations for his peremptory strikes are neutral, *Antwine, supra,* directs the trial court to consider the prosecutor's explanations as a part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges. *Antwine, supra,* at 64[14]. By their very nature, peremptory challenges require subjective evaluations of veniremen by counsel.

Counsel must rely upon perceptions of attitudes based upon demeanor, gender, ethnic background, employment, marital status, age, economic status, social position, religion, and many other fundamental background facts. *Id.* at 64[14]. The trial judge should consider whether similarly situated white venirepersons escaped the state's challenge; the relevance of the state's justification for challenging a particular venireperson to the kind of crime charged; the nature of the evidence to be adduced by both parties; and, the potential punishment which a guilty verdict may produce. *Id.* at 65[15]. *Batson* declares unacceptable only those perceptions based on race. *Id.* at 64[14].

Here, the trial court made a finding of no discrimination. Great deference is given to the opportunity of the trial court to judge the credibility of a witness, here the prosecutor. In the present case, the prosecutor gave neutral explanations, clear and reasonably specific, for excluding the three black venirepersons. Additionally, the prosecutor's explanations were relevant to the crime charged, burglary, and to the evidence to be adduced, here by police officers and detectives. Also, there were similarly situated white venirepersons struck. Thus, the trial court's finding was not clearly erroneous.

■ In defendant's second point, he alleges the trial court erred in failing to sustain defendant's motion for judgment of acquittal when the prosecutor failed to establish proof of ownership or occupancy of the premises at 9431 Olive Street Road, an essential element of the crime with which defendant was charged.

Defendant was convicted of one count of burglary in the second degree. All elements of second degree burglary may be proven by circumstantial evidence. *State v. Hayes,* 713 S.W.2d 275, 277[1–4] (Mo. App.1986). In testing the sufficiency of the state's circumstantial proof by a motion for judgment of acquittal, the state is entitled to the most favorable construction of all the evidence and all reasonable inferences which may be drawn therefrom. *State*

*v. Thurber*, 625 S.W.2d 931, 933[3–5] (Mo. App.1981).

The reasons for requiring proof of ownership of a building are: (1) for the purpose of showing that the premises alleged to have been burglarized was not the dwelling of the accused; and, (2) for the purpose of so identifying the offense so as to protect the accused from a second prosecution for the same offense. *State v. Wilhite*, 587 S.W.2d 321, 323[1, 2, 3] (Mo.App.1979) citing *State v. Ford*, 403 S.W.2d 611, 612[1] (Mo.1966).

When police arrived at the premises pursuant to Bess Goodman's call, they found defendant and Quinten Johnson in front of an apartment at 1100 Indian Trails Drive. When the police inquired as to what defendant and Quinten Johnson were doing, they responded that they were looking for Mary Wilson. Officer Hanley testified that when he went to look for a Mary Wilson he could not find her and when he called the dispatch to check the card file (compiled from occupancy permits which must be filed by the residents) Mary Wilson's name (nor any similar name) did not appear as a resident at 1100 Indian Trails Drive or any place on Indian Trails Drive.

Officer Hanley testified that he investigated the area for any break-ins and found that storage lockers in the garage at 9431 Olive Street Road had been broken into. He testified that one of these storage lockers, which contained the dustbuster charging base, but not the dustbuster was owned by Mr. Meador. Defendant's car was found in the garage at 9431 Olive Street Road near the storage lockers, and the dustbuster was found in defendant's car. Detective Kletzker testified that defendant, during questioning, admitted he and his companion, Quinten Johnson, broke into all three storage lockers.

At trial, defendant testified that he and Quinten Johnson drove to the City of Olivette looking for a person named Mary Wilson. He testified he was given directions to Mary Wilson's residence over the phone. However, defendant expressed confusion about the directions he had been given and his testimony revealed he was unsure about how to enter the building's garage.

Marlen Khaykin, who resides at 9431 Olive Street Road, testified that she did not know defendant, nor did she give him permission to open her storage locker. Bess Goodman testified that she saw defendant enter the garages at 1100 Indian Trails Drive and the garages at 9431 Olive Street Road. She testified that she had lived at 9431 Olive Street Road for sixteen years, that her complex was owned by one landlord, and she knew defendant "didn't belong there." She also testified that the two people she saw were black and therefore she knew they did not reside at the apartments because "we had no black tenants at that time." She testified that she did not give defendant permission to enter the premises.

Based on the evidence, it is reasonable to infer that defendant did not reside or own the premises at 9431 Olive Street Road. Defendant's point is not meritorious.

Judgment affirmed.

DOWD, P.J., and HAMILTON, J., concur.